**Bobbie J. DAVIS, Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant-Appellee.**

No. 77–2307.

United States Court of Appeals, Fifth Circuit.

July 25, 1979.

FAY, Circuit Judge:

This case arises on appeal from a denial of a claim for Social Security disability benefits. We vacate and remand for further proceedings.

On January 30, 1975, the claimant, Bobbie J. Davis, filed an application for disability and disability insurance benefits under Title II of the Social Security Act, as amended[1] and for supplemental security income benefits under Title XVI of the Social Security Act, as amended.[2] She alleged disability due to chronic back pain. She claimed that the back problem prevented her from being gainfully employed. After the claim was rejected by the Bureau of Disability Insurance, Mrs. Davis was granted a hearing before an administrative law judge, who also rejected her claim. The appeals council and the district court affirmed the decision of the administrative law judge.

The only medical evidence before the administrative law judge consisted of Mrs. Davis' medical records as compiled by Dr. William Haller, her orthopedic surgeon. The evidence revealed the following. Mrs. Davis worked at a local hospital as a nurse's aide for ten years. Because of back trouble, she was transferred to another job as a home health aide. After numerous absences from work due to back problems, she ceased work in September 1974. She visited the office of Dr. Haller on nine occasions beginning on September 27, 1974. A past history of low back pain was noted and Dr. Haller recommended complete bed rest. On October 7, 1974, Mrs. Davis returned to the doctor and complained that the pain was worse. On October 9, 1974, she was hospitalized for fifteen days for a myelogram and was discharged with the diagnosis of low back pain secondary to lumbosacral strain and was given empirin # 3 for pain. On November 7, 1974, she was still having back pain and was given indocin for pain. On December 3, 1974, she was again admitted to the hospital for a spinal tap and was released on December 6, 1974 with darvon compound 65 for pain. On December 20,

Myron K. Allenstein, Gadsden, Ala., for plaintiff-appellant.

J. R. Brooks, U. S. Atty., Caryl P. Privett, Elizabeth Todd Campbell, Asst. U. S. Attys., Birmingham Ala., for defendant-appellee.

Before WISDOM, CLARK and FAY, Circuit Judges.

---

1. 42 U.S.C. §§ 416(i), 423 (1976).

2. 42 U.S.C. § 1381 (1976).

1974, Dr. Haller concluded, "the primary problem is psychosomatic pain" and that Mrs. Davis was "chronically disabled" since she could not be rehabilitated in the hospital facilities. On December 23, 1974, Dr. Haller wrote, "I feel that this patient has chronic back pain, that cannot be helped by surgery. I think we should consider her disabled from this point on."

After Mrs. Davis testified as to her condition and its effect on her physical capabilities, the administrative law judge called Dr. James Crowder, a psychologist and government vocational expert. Dr. Crowder had neither spoken with nor examined Mrs. Davis; his contact with her was limited to listening to her testimony and studying her medical records. After testifying generally about Mrs. Davis' previous work experience, Dr. Crowder was asked the following question:

> Do you have an opinion, based upon this knowledge, along with your education, background, and training as to whether the claimant is capable of engaging in substantial, gainful activity in the national economy *if I should find*, based upon the testimony, evidence, of record, *that within the period of September the 12th, 1974 to today the claimant was physically or mentally impaired to such extent that she was capable of doing only light and sedentary work* as defined in the references and documents mentioned by you? (emphasis added).

Dr. Crowder answered that, under those circumstances, she would be capable of doing "work in the light and sedentary physical requirements categories . . . ."

In denying the claim, the administrative law judge concluded that Mrs. Davis had not shown an impairment of sufficient degree to prevent her from engaging in substantial gainful activity. The reasoning of the administrative law judge bears repeating:

> The Administrative Law Judge is of the opinion that claimant is experiencing back pain, however, medical evidence as to the cause of this back pain is lacking. There is no evidence of any abnormalities of the lumbar spine. There is no evidence of any continued limitation of motion or of any joint deformity. There is no evidence of any neurological impairment, nor is there any evidence of any other significant impairment which would cause claimant's back pain.
>
> A vocational expert also testified at the hearing. Based upon the claimant's age, education, special training, and work experience, he stated that there were jobs that claimant could have done from September 12, 1974, through the date of the hearing *if it were to be found that claimant was capable only of performing sedentary to light work.*
>
> The Administrative Law Judge concludes that the evidence shows that claimant could not have performed her regular work during the period in question, but that she could have performed substantial gainful activity in the types of jobs described by the vocational expert. Thus, claimant cannot be found to be entitled to disability insurance benefits or to supplemental security income benefits under the Social Security Act, as amended. (emphasis added).

We are mindful that in reviewing the decision of the administrative law judge, our role is limited. Neither this court nor the district court may substitute its judgment as to facts or credibility for the judgment of the administrative law judge, *e. g., Herridge v. Richardson,* 464 F.2d 198 (5th Cir. 1972); *Brown v. Finch,* 429 F.2d 80 (5th Cir. 1970), and we do not do so here. This case is one of those rare instances where the record is so undeveloped in a crucial area that we must remand so that the administrative law judge can build a complete record upon which to exercise his sound discretion. In view of the extensive medical treatment and examinations, coupled with Dr. Haller's opinion as to both the existing disability and presence of "psychosomatic pain", we feel this case falls within that limited area defined by *McGee v. Weinberger,* 518 F.2d 330 (5th Cir. 1977). These facts cry out for confirmation or refutation by a qualified expert psychiatrist.

See also *Turner v. Califano*, 563 F.2d 669 (5th Cir. 1977). Although the orthopedic surgeon opined that the back pain was psychosomatic, he was no expert on possible mental causes of the problem. The psychologist did not even examine Mrs. Davis. As reflected by the question asked of the psychologist and the administrative law judge's reliance on his testimony, the conclusion that Mrs. Davis was not disabled was based on the false predicate that Mrs. Davis was "capable only of performing sedentary to light work." The only evidence on this question was Dr. Haller's conclusion that Mrs. Davis was disabled. The administrative law judge *assumed* to the contrary.

This is not a case where the administrative law judge did not believe that the claimant was in pain. Moreover, the administrative law judge did not conclude that the pain was insignificant. The administrative law judge's doubt as to the cause of the pain seems to be the reason he denied the benefits. Having accepted that Mrs. Davis was suffering from unexplained pain, the administrative law judge could not simply deny the claim without obtaining a consultative examination by a psychiatrist pursuant to 20 C.F.R. § 404.1527.[3] "If the [administrative law judge] does not have before him sufficient facts on which to make an informed decision, his decision is not supported by substantial evidence." 518 F.2d at 332.

Accordingly, this case is vacated and remanded to the administrative law judge so that a psychiatrist can examine Mrs. Davis and testify as to the cause of her back pain.

We indicate no opinion as to the degree of credibility to be placed upon the testimony of Mrs. Davis or any other witness. Nor do we intend to indicate any inclination toward one result or another on the pending claim. Our holding is that under the peculiar facts of this case, McGee, the regulation, and justice require an examination by a qualified psychiatrist.

Vacated and remanded.

CHARLES CLARK, Circuit Judge, dissenting:

I believe my brothers misperceive the basis for the administrative law judge's rulings and thus incorrectly fault the procedures followed.

In Social Security disability cases, the claimant bears the burden of establishing the existence of a disability as defined by the Act. *Rhynes v. Califano*, 586 F.2d 388, 389 (5th Cir. 1978); *McDaniel v. Califano*, 568 F.2d 1172 (5th Cir. 1978). In drafting the Act, Congress defined with specificity both the meaning of "disability" and the type of proof a claimant must put forward to satisfy that definition. The Act states that an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act further explains that "physical or mental impairment" is limited to "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).

Because of the Act's emphasis on clinically demonstrable evidence of disability, a physician's statement that a claimant is or

---

**3.** Section 404.1527 provides:

Upon reasonable notice of the time and place thereof, any individual alleged to be under a disability shall present himself for and submit to physical or mental examinations or tests, at the expense of the Administration, by a physician or other professional or technical source designated by the Administration or the State agency authorized to make determinations as to disability. If any such individual fails or refuses to present himself for any examination or test, such failure or refusal, unless the Secretary determines that there is good cause therefor, shall be a basis for determining that such individual is not under a disability. Religious or personal scruples against medical examination or test shall not excuse an individual from presenting himself for a medical examination or test.

**1328**

is not "disabled" is entitled to weight only to the extent that it is supported by medically acceptable diagnostic data. This principle inheres in the very logic of the Act, has been adopted by HEW regulation, and is endorsed by this court. The pertinent HEW regulation provides:

> The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, "disabled," "permanently disabled," "totally disabled," "totally and permanently disabled," "unable to work," or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.

20 C.F.R. § 404.1526. On at least two occasions this court has affirmed the denial of disability benefits despite statements by a physician that the claimant was disabled. *Laffoon v. Califano*, 558 F.2d 253 (5th Cir. 1977); *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). In the latter case we said: "[w]hile this court has not required that a disability must be proven exclusively by objective medical data, *Hayes v. Celebrezze*, 311 F.2d 648, 654 (5th Cir. 1963), the claimant must produce more than an unsubstantiated, contradictory and totally conclusory statement to carry her burden of establishing a medically demonstrable disability." 480 F.2d at 49.

In the instant case, Mrs. Davis' physician, Dr. Haller, despite extensive diagnostic and treatment efforts, was never able to isolate any physical explanation for Mrs. Davis' pain, nor was he able to alleviate her symptoms. In his treatment entry dated December 20, 1974, Dr. Haller wrote:

> This patient continues to have pain. I think that the primary problem of this patient is psychosomatic pain, due to this

fact I do not feel I can be of any more help to her. She is informed of this. A letter will be written stating that I feel that she is chronically disabled since I do not feel that this patient will be rehabilitated by the facilities available in Gadsden.

Dr. Haller's conclusion was followed three days later by a "To Whom it May Concern" letter which stated:

> I feel that this patient has chronic back pain, that cannot be helped by surgery. I think we should consider her disabled from this point on.

A diagnosis rendered later concluded that Mrs. Davis had "chronic low back pain that is not amenable to any medical means that I have available to me."

Nothing in Dr. Haller's statements or in his medical reports purports to speak to the severity of Mrs. Davis' pain. In context, Dr. Haller's use of the phrase "chronically disabled" in his December 20, 1974, report was clearly intended to mean that Mrs. Davis' back pain was inveterate and likely to continue. These statements of temporal duration were never intended to be interpreted as conclusions that Mrs. Davis suffered from pain of such severity or duration that she could not be gainfully employed, and if they had been so intended, they would have been utterly unsupported by any diagnostic data known to the doctor.

Pain alone, of course, may be disabling, even when a medical cause for the pain is not objectively discernible, and an administrative law judge must consider subjective testimony of pain by the claimant. *DePaepe v. Richardson*, 464 F.2d 92, 94, 99–100 (5th Cir. 1972). But it is for the administrative law judge, not the reviewing court, to assess the weight of the subjective testimony, and "we have never suggested that the subjective evidence should take precedence over conflicting objective medical testimony; nor have we ever held that all pain is disabling." *Gaultney v. Weinberger*, 505 F.2d 943 (5th Cir. 1974); *Rhynes v. Califano, supra*, 586 F.2d at 390.

Given the lack of medical data supporting her claim, Mrs. Davis' case was forced to rise or fall on the strength of her own testimony. The record discloses that the administrative law judge carefully and sensitively questioned Mrs. Davis concerning her symptoms and her daily routines. Although accepting the assertion that she had pain, he concluded it was not so severe that it precluded gainful employment in jobs involving only light or sedentary work. As we stated in *Gaultney*, "[i]t is not necessarily inconsistent to find that a claimant suffers pain in fact, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act." 505 F.2d at 946.

The administrative law judge concluded that Mrs. Davis' pain was severe enough to prevent her from returning to her former job. That finding shifted the burden to the government "to show that there is some other kind of 'substantial gainful work' that the claimant is able to perform." *Lewis v. Weinberger*, 515 F.2d 584, 587 (5th Cir. 1975). This is why Dr. Crowder, the vocational expert who testified at the hearing, was called. He established that work did exist which Mrs. Davis could do. The majority criticizes Dr. Crowder's testimony because the administrative law judge asked him to assume that Mrs. Davis was not so physically or mentally impaired that she could not perform light or sedentary work. With all due respect, I am of the view that such criticism is wholly misplaced. It was not the function of the vocational expert to assess the severity of Mrs. Davis' impairment, but only to testify as to whether, given a stated level of impairment, jobs existed which Mrs. Davis was qualified to perform. Dr. Crowder's expertise was vocations, not medicine. Having heard evidence that had not convinced him that Mrs. Davis was completely unable to perform any substantial gainful work, the administrative law judge needed to know whether Mrs. Davis was vocationally qualified to do the types of jobs that he thought she could physically perform. For that purpose, the administrative law judge's question to Dr. Crowder was tailored aptly.

The majority faults the administrative law judge's failure to seek on his own initiative a psychiatric examination of Mrs. Davis. The only evidence of mental disorder as the cause of Mrs. Davis' pain was Dr. Haller's statement that he thought the pain was psychosomatic. That conclusory statement by Dr. Haller, who is not a psychiatrist or psychologist, is the turning point in the case for them but not for me. Far from being supported by clinical data, it was a supposition expressly predicated on the absence of clinical data. Dr. Haller says: "I *think*" that proof of causation should come from another field of medical science because nothing in my field has provided an answer.

In *McGee v. Weinberger*, 518 F.2d 330 (5th Cir. 1975), the case relied on by the majority, there was objective medical evidence of psychiatric impairment, and the claimant requested a consultive psychiatric examination at government expense because she was financially unable to obtain such an examination. By contrast, in Mrs. Davis' case, no objective medical evidence pointed to any mental or emotional disorder, no psychiatric examination was ever suggested by Dr. Haller, Mrs. Davis never sought a psychiatric examination before or during her hearing, and nothing in her testimony before the administrative law judge indicated any need for such an examination. We have previously explained that *McGee* "does not require a consultive examination at government expense unless the record establishes that such an examination in *necessary* to enable the administrative law judge to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original.)

A psychiatrist might have helped alleviate Mrs. Davis' pain, or determined a nonphysical cause for it, but he could not have added anything to the claim that the pain in fact existed, since its existence was conceded by the administrative law judge. The issue was whether pain so impaired her that she could perform no substantial gainful work. Her testimony as to her daily routine chores which included partial care of

her young child formed more than adequate support for the trier of fact, the administrative law judge, to conclude that, while she could not perform her former job, she could perform jobs calling for light or sedentary work. When he gave this determination to the vocational expert and received that expert's unrefuted opinion that there were jobs available to persons with that limitation, the proof would support no other conclusion than denial of benefits. We said in *Gaultney*:

> There may be, as Gaultney argues, a gap in the evidence as to the possible emotional source of his pain. If there is such a gap, however, it is to be laid at the door of him who bore the burden of proof, Gaultney himself. There was no duty on the Administrative Law Judge to explore further the psychiatric theory. Furthermore, as we have already stated, the Administrative Law Judge did not find that Gaultney was not in pain; he found that he was not disabled within the meaning of the Act. Whether the pain is organic or psychiatric in origin would therefore be immaterial.

505 F.2d at 946–57.

Because I would affirm the denial of benefits, I respectfully dissent.