Slip Op. 04-121

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                :
ANSHAN IRON & STEEL                             :
COMPANY, LTD., et al.,                          :
                                                :
            Plaintiffs,                         :    **PUBLIC VERSION**
                                                :
            v.                                  :
                                                :    Before: WALLACH, Judge
UNITED STATES OF AMERICA                        :    Consol. Court No. 02-00088
                                                :
            Defendant,                          :
                                                :
            and                                 :
                                                :
UNITED STATES STEEL CORPORATION,                :
and GALLATIN STEEL COMPANY, et al.,             :
                                                :
            Defendant-Intervenors.              :
_____ :


[United States Department of Commerce's Final Results Pursuant to Remand are Remanded]

                                        Decided: September 22, 2004

Lafave & Sailer, LLP, (Francis J. Sailer, Arthur J. Lafave III), for Plaintiffs Anshan Iron & Steel Co., Ltd., and Benxi Iron & Steel (Group) Co., Ltd.

White & Case, LLP, (William J. Clinton, Adams C. Lee, Robert G. Gosselink, William J. Moran) for Plaintiff Shanghai Baosteel Group Corp., Baosteel America, Inc., and Baosteel Group International Trade Corp.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; Stephen C. Tosini, Trial Attorney, U.S. Department fo Justice, Civil Division, Commercial Litigation Branch; Patrick V. Gallagher, Senior Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for Defendant.

Skadden, Arps, Slate, Meagher & Flom, LLP, (John J. Mangan), for Defendant-Intervenors United States Steel Corp.

Schagrin Associates, (Roger B. Schagrin) for Defendant-Intervenors Gallatin Steel Co., IPSCO Steel Inc., Steel Dynamics, Inc. and Weirton Steel Corp.

Wiley, Rein & Fielding, LLP, (Timpthy C. Brightbill), for Defendant-Intervenors Nucor Corp.

**OPINION**

**WALLACH, Judge:**

**I**
**Introduction**

This matter is before the court following remand to the United States Department of Commerce, International Trade Administration (the "Department," "Commerce" or "ITA"). In Anshan Iron & Steel Company, Ltd., et al., v. United States, 27 CIT __, Slip. Op. 03-83 (July 16, 2003) ("Anshan I"), this court remanded Commerce's determination contained in Final Determination of Sales at Less Than Fair Value: Certain Hot Rolled Carbon Steel Flat Products from the People's Republic of China, 66 Fed. Reg. 49,632 (Sept. 28, 2001) ("Final Determination") and the accompanying Issues and Decision Memorandum for the Less than Fair Value Investigation of Certain Hot Rolled Carbon Steel Flat Products from the People's Republic of China: April 1, 2000 through September 30, 2000 (Sept. 21, 2001) ("Decision Memo"). Pub. Doc. 349, Appendix to Memorandum of Law in Support of Baosteel's Rule 56.2 Motion for Judgment Upon The Agency Record ("Baosteel App.") Attachment 4. Plaintiffs Anshan Iron &

Steel Company, Ltd., New Iron & Steel Company, Ltd. and Angang Group International Trade Corporation ("Plaintiff Anshan" or "Anshan"); Benxi Iron & Steel Company, Ltd., Benxi Steel Plate Company, Ltd., and Benxi Iron & Steel Group International Economic and Trade Company, Ltd. ("Plaintiff Benxi" or "Benxi"); and Shanghai Baosteel Group Corporation, Baosteel American, Inc., and Baosteel Group International Trade Corporation ("Plaintiff Baosteel" or "Baosteel") (collectively "Plaintiffs") had moved for judgment upon the agency record pursuant to USCIT Rule 56.2, challenging certain aspects of Commerce's decision. Pursuant to this court's ruling in Anshan I, Commerce reconsidered certain aspects of its Final Determination and issued its Final Results Pursuant to Remand (Nov. 7, 2003) ("Remand Results"). Plaintiffs now challenge Commerce's continued reliance upon surrogate values for Plaintiffs' self-produced intermediate inputs.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (1994). For the reasons set forth below, Commerce's Redetermination is remanded for action consistent with this opinion.


**II**
**Background**

Plaintiffs produce and export certain hot-rolled carbon steel flat products from China. In the process of producing hot-rolled steel, Plaintiffs utilize both purchased and self-produced inputs. Among their self-produced intermediate inputs are electricity generated from the processing of purchased coal, as well as oxygen, nitrogen, and argon gases. These inputs are produced from various purchased materials, including, inter alia, iron ore, scrap, coal, water, and other chemicals. See Anshan I, Slip. Op. 03-83 at 3-4.

3

Plaintiffs provided a factors of production database to the Commerce Department on February 26, 2001, in which they reported their consumption of coal and other material, energy, and labor factors used to produce the intermediate inputs. Commerce confirmed the accuracy of the reported factors during on-site verification.

In its Preliminary Determination, Commerce assigned surrogate values to Plaintiffs' intermediary inputs rather than including valuations for Plaintiffs' factors of production database. See Notice of Preliminary Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products From the People's Republic of China, 66 Fed. Reg. 22,183 (May 3, 2001) ("Preliminary Determination"). In order to calculate selling and general expenses, Commerce averaged the 1999-2000 financial statements of two Indian steel producers; Tata Iron and Steel Company, Ltd. ("TATA") and Steel Authority of India, Ltd. ("SAIL"). Id. at 22,193. To calculate profit, Commerce used excerpts of TATA's 2000-2001 financial statement. Id.

On September 21, 2001, Commerce issued its Decision Memo, and on September 28, 2004, Commerce issued its Final Determination. Commerce continued to value the intermediate energy inputs based upon the reported factor usage rates for each of the inputs, rather than valuing the inputs used to produce the intermediate inputs. Decision Memo at 17. For general expenses and profit, Commerce relied solely on an excerpt of TATA's 2000-2001 financial statement. Id. at 23-24. On October 15, 2001, and October 31, 2001, Plaintiffs Anshan, Benxi and Baosteel requested an opportunity to comment on what they considered new information referenced in Commerce's final determination. Commerce rejected this request and returned plaintiffs' letters, stating that they contained untimely argument.

On July 16, 2003, this court ruled that Commerce had deviated from its established

practice of valuing factors of production of self-produced intermediate inputs without adequately addressing the deviation, and that Commerce should have adjusted Baosteel's factors of production to reflect its decision to treat Baosteel's defective hot-rolled sheets as non-prime merchandise under investigation sold in the home market. Anshan I,Slip. Op. 03-83 at 18, 30. Accordingly, Commerce was directed to either provide an adequate explanation for its deviation from previous practice, or assign surrogate values to Plaintiffs' factors of production for its self-produced intermediate inputs, and to "adjust Plaintiff Baosteel's factors of production calculations in order to reflect Commerce's decision not to treat Baosteel's defective sheets as a byproduct." Id. at 18, 34. Familiarity with the decision in Anshan I is presumed.

On November 7, 2003, Commerce filed Final Results Pursuant to Remand stating that it had

> (1) provided an explanation for its methodology in assigning surrogate values to Respondents' self-produced factors in this investigation; and (2) adjusted Baosteel's reported factors by adding the total amount of defective hot-rolled sheet produced during the period of investigation ("POI") to the total amount of merchandise under investigation in the denominator of the factor of production ratios.

Remand Results at 1.


**III**
**Standard of Review**


In reviewing Commerce's Final Determination, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1999); Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States, 25 CIT 1150, 1152 (2001). "Substantial

evidence has been defined as "more than a 'mere scintilla,' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion .'" Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 404-5 (1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987)); Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir., 1984); see also Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1076-77 (1988) (holding that the court neither weighs the evidence nor substitutes its own judgment for that of the agency). However, "[t]he court will find a determination unlawful where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." Rhone-Poulenc, Inc. v. United States, 20 CIT 573, 575 (1996) (citing Budd Co. Ry. Div. v. United States, 1 CIT 67, 70-76 (1980); Indus. Fasteners Group v. United States, 2 CIT 181, 190 (1981)).

**IV**
**Analysis**

**A**
**Commerce's Valuation of Plaintiffs' Intermediate Inputs Continues to be Unsupported by the Evidence and Not in Accordance With Law**

In Anshan I this court held Commerce's valuation of Plaintiff's inputs to be unsupported

6

by substantial evidence and not in accordance with law. <u>Anshan I</u>, Slip. Op. 03-83 at 6. Thus, the court directed Commerce to "either (1) provide an adequate explanation for its deviation from previous practice, or (2) assign surrogate values to Plaintiffs' factors of production for its self-produced intermediate inputs." <u>Id.</u> at 18.

Commerce now claims to have clarified its position concerning the valuation of self-produced inputs in the two years since the Final Determination. Remand Results at 14-16. Commerce claims that currently, it matches the valuation of inputs to the respondent's actual manufacturing experience unless to do so would either make a minimal difference, or "a significant element of cost would not be adequately accounted for in the overall factors build up." Defendant's Response to Plaintiffs' Comments Concerning Defendant's Final Remand Determination ("Defendant's Response") at 7 (quoting Remand Results at 15). To establish what it now describes as a case-by-case approach, Commerce enumerates several past and present cases as examples. Remand Results at 4-5. To establish past practice Commerce cites <u>Notice of Final Determination of Sales at Less Than Fair Value: Coumarin from the People's Republic of China</u>, 59 Fed. Reg. 66,895, 66,901 (December 28, 1994) ("<u>Coumarin from China</u>") in which factors of production for self-produced inputs were *not* directly valued because their percentage in the overall process was so small that their valuation would not increase accuracy.

Commerce points out that in <u>Final Determination of Sales at Less Than Fair Value: Certain Cut-to-Length Carbon Steel Plate from the People's Republic of China</u>, 62 Fed. Reg. 61,964 (Nov. 20, 1997) ("<u>CTL Plate</u>"), where sufficient data was available and verified, the factors of production for self-produced intermediate inputs *were* directly valued. In <u>Notice of Preliminary Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Flat-Rolled</u>

Carbon Quality Steel Products from the People's Republic of China, 65 Fed. Reg. 1,117 (January 7, 2000) ("Cold-Rolled I"), Commerce notes, where the accuracy of the data could not be determined, the factors of production for intermediate inputs were *not* directly valued. Commerce also provides more recent examples of its approach to valuing factors of production for self-produced intermediate inputs. In Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Structural Steel Beams from the People's Republic of China, 66 Fed. Reg. 67,197 (December 28, 2001) ("Steel Beams") and Notice of Final Determination of Sales at Less Than Fair Value: Carbon and Certain Alloy Steel Wire Rod from Ukraine, 67 Fed. Reg. 55,785 (Aug. 30, 2002) ("Wire Rod"), Commerce did not value the inputs into self-produced factors because there was no record evidence that the surrogate companies produced these inputs. Remand Results at 14-15. In the most recent case cited, Notice of Final Antidumping Duty Determination of Sales at Less Than Fair Value and Affirmative Critical Circumstances: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 37,116 (June 23, 2003) ("Frozen Fish from Vietnam"), Commerce articulated the policy of valuing factors of production which go into self-produced intermediate inputs unless one of two conditions apply. The first, as reflected in Coumarin from China, is when the percentage of these factors is so small as to be insignificant; the second, as reflected in Cold Rolled I, Steel Beams, and Wire Rod, is when significant elements are not adequately accounted for or the accuracy of the information needed cannot be determined.[1] Frozen Fish from Vietnam, 68 Fed. Reg. at 37,121.

---

[1] This court does not rely on subsequent determinations for precedential value. Thus, determinations subsequent to September 28, 2001, the date of the final results in the instant matter, may not be used to establish commerce's standard practice.

In its Remand Results, Commerce repeatedly emphasizes its goal of accuracy and concludes that, because the limited evidence on the record, i.e. TATA's excerpted 2000-2001 financial statement, "does not contain any statements that TATA self-produced any type of power," its decision to assign surrogate values to Plaintiffs' self-produced factors results in a more accurate calculation than assigning surrogate values to the inputs into these self-produced factors. Remand Results at 3 and 10, n.1.

Plaintiff Anshan disputes Commerce's Remand Results, claiming that they are neither in keeping with Commerce's standard practice nor in accordance with this court's instructions in Anshan I. Anshan argues that in assigning surrogate values to intermediate inputs, Commerce cites to previous decisions which either do not support its decision here or which directly contradict its reasoning here. Comments of Plaintiffs Anshan and Benxi on the Final Results Pursuant to Remand Issued by Defendant ("Anshan's Comments") at 1-2.

Anshan argues that of the three cases which Commerce cites to support its decision, only one, Coumarin from China, actually allows for the administrative short cut of valuing intermediate inputs. Plaintiff Anshan points out that in that instance, Commerce both acknowledged its departure from standard practice and justified it by noting that it had no significant impact on the calculation of normal value. Id. at 2. Anshan distinguishes Cold-Rolled I by pointing out that there Commerce "could not clearly determine what portion of self-produced energy factor went into direct steelmaking," and because it was a one issue adverse facts available case, there was no further explanation. Id. at 3 (citing Cold Rolled I, 65 Fed Reg at 1,125). Whereas "[t]he record in the present case contained complete and verified factors of production for electricity and industrial gases." Id. at 4, n. 3 (citing Anshan I, Slip. Op. 03-83 at

9

17). Anshan points out that in CTL Plate Commerce utilized the reported and verified intermediate input factors of production submitted by the respondents. Anshan quotes Commerce's statement in CTL Plate that "[i]t is the Department's practice to collect data on all direct inputs actually used to produce the subject merchandise, including any indirect inputs used in the in-house production of any direct input." Id. at 3 (citing CTL Plate, 62 Fed. Reg. at 61,976).

Anshan claims that Commerce has disregarded the Court's holding in Anshan I, and that Commerce should have recognized, as it did in Cold Rolled II, "that TATA did, in fact produce a significant amount of the electricity it consumed during the year relevant to this case." Id. at 6 (citing Anshan I, Slip. Op. 03-83 at 17). In response to Commerce's claim that its overarching desire is to "generate the most accurate result," Plaintiff states that "The Department's use of semantics here is disingenuous, at best." Id. at 3.

Plaintiff Baosteel argues that Commerce failed to provide a reasonable explanation for its continued refusal to calculate normal value based on Baosteel's actual factors of production. Baosteel argues that Commerce's entire argument is premised on speculation that TATA did not produce its own power, based on TATA's excerpted 2000-2001 financial statement.[2] Baosteel's Comments on The Department's Remand Determination ("Baosteel's Comments") at 2-3. Baosteel points out, however, that all parties are aware that TATA does in fact produce its own electricity. Baosteel claims that "[Commerce's] entire determination on remand stems from its unsupported belief that TATA does not self-produce electricity and that because of this

_____

[2] The court reiterates here, as stated in Anshan I, under Asociacion Columbiana de Exportadores de Flores v. United States, 13 CIT 13, 15 (1989), *aff'd* 901 F.2d 1089 (Fed. Cir. 1990), "Speculation is not support for a finding . . . ."

10

unsupported belief the Department speculates about the existence of a <u>potential</u> 'imbalance in the representative capital costs from the surrogate company.'" <u>Id.</u> at 3. (emphasis in original) (citing <u>Anshan I</u>, Slip. Op. 03-83 at 16, n.7.)[3]

Baosteel further argues that Commerce's claim that valuation of the factors of production for intermediate inputs is prohibitively difficult is contradicted by commerce's valuation of such inputs in <u>CTL Plate</u>. <u>See</u> Baosteel's Comments at 10.

As this court pointed out in <u>Anshan I</u>, Commerce is generally at liberty to discard one methodology in favor of another where necessary to calculate a more accurate dumping margin,

---

[3]      Indeed, Commerce acknowledged TATA's electricity production capabilities in a recent determination. <u>See</u> <u>Notice of Preliminary Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products From the People's Republic of China</u>, 67 Fed. Reg. 31,235, 31,239 (May 9, 2002) ("Cold-Rolled II"). In <u>Cold-Rolled II</u>, Commerce stated:

> In this case, as explained below, to value overhead, selling general and administrative ("SG&A"), interest, and profit, we are relying on the 2000-2001 financial statements of Steel Authority of India Limited ("SAIL") and TATA Steel ("TATA"), both of whom are Indian integrated steel producers of cold-rolled steel. The financial statements of both companies . . . indicate that during the 2000-2001 financial year SAIL and TATA self produced approximately 60 and 54 percent, respectively, of the electricity they consumed.

<u>Id.</u> Commerce's decision in the present case therefore directly contradicts its previous acknowledgment that, during the year in question, TATA produced a significant amount of the electricity it consumed.

<u>Anshan I</u>, Slip. Op. 03-83 at 16.

The Court in <u>Anshan I</u> held that it was entitled to take judicial notice of <u>Cold Rolled II</u>. <u>Id.</u> (citing <u>Borlem S.A. - Empreedimentos Industriais v. United States</u>, 913 F.2d 933, 937 (Fed. Cir. 1990) and <u>Union Camp Corp. v. United States</u>, 23 CIT 264, 278 (1999)).

however, Commerce must, *inter alia*, explain the basis for its change of methodology and demonstrate that its explanation is in accordance with law and supported by substantial evidence. Cultivos Miramonte S.A. v. United States, 21 CIT 1059, 1064, 980 F. Supp. 1268, 1274 (1997); Fujian Mach., 178 F. Supp. 2d at 1327-28. In Anshan I, Plaintiff's had disputed Commerce's decision, in its Final Determination, to "value respondents' energy inputs (i.e., oxygen, argon, nitrogen, and electricity) through the use of surrogate valuation, rather than based on surrogate valuation of the factors going into the production of those inputs." Decision Memo at 17. Commerce had determined that Plaintiffs' capital intensive process would result in inaccuracies because these "capital costs . . . do not appear on TATA's financial statements and would not be included in the normal value under respondents' preferred methodology." Id. Commerce's reasoning was based on the assumption that, because TATA purchased energy inputs, it did not also self-produce these inputs. Id. The court found this assumption to be speculative and unfounded. Anshan I, Slip. Op. 03-83 at 16. Commerce was relying on an incomplete version of TATA's 2000-2001 financial statement. Id. Its reasoning was directly contradicted by the complete version of this data which was on the record in another investigation. Id. at 16-17. The court thus found that Commerce was not justified in its deviation from its established practice as reflected in CTL Plate (where Commerce refused to disregard the reported and verified intermediate input factors of production that had been submitted by the respondents).[4] See Id. at

---

[4] See also Anshan I, Slip. Op. 03-83 at 8, n. 2 (citing Coumarin from China, 59 Fed. Reg., at 66,899 and Silicomanganese From the People's Republic of China: Notice of Final Results of Antidumping Duty Administrative Review, 65 Fed. Reg. 31,514, 31,515 (May 18, 2000) and accompanying Issues and Decision Memorandum (May 18, 2000), for the proposition that the Department's established practice is to value self-produced inputs using the value of the factors of production employed to manufacture the input).

12

8-9.

> The court held that:

> [i]n valuing Plaintiffs' intermediate inputs, Commerce [had] deviated from its well-established practice of assigning surrogate values to the factors of production for those intermediate inputs without providing an adequate explanation for such deviation. Commerce's failure to rely on Plaintiffs' submitted and verified factors of production [was ] inconsistent with the statute's directive to use the best available information to construct a nonmarket economy ("NME") product's normal value as it would have been if the NME were a market economy country.

Id. at 6-7.

Deference is due to Commerce's decisions and the reviewing court may not substitute its judgment for that of Commerce. See Davis v. Califano, 599 F.2d 1324 (1979) ("Neither this court nor the district court may substitue its judgement as to facts or credibility for the judgment of the administrative law judge."). Here Commerce, the finder of fact, has based its conclusion on a false premise; that TATA did not self-produce electricity. See id. at 1326. "'If the (administrative law judge) does not have before him sufficient facts on which to make an informed decision, his decision is not supported by substantial evidence'." Id. at 1327 (citing McGee v. Weinberger, 518 F.2d 330, 332 (5th Cir. 1997)). This court has consistently held that deference is not due an agency determination which relies upon inadequate factual basis or is inconsistent with congressional intent. See, e.g., Rhone-Poulenc Inc., 20 CIT at 575 (citing Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368, 106 S. Ct. 681, 88 L. Ed. 2d 691 (1986); Budd Co. Ry. Div., 1 CIT at 70-76; Indus. Fasteners Group v. United States, 2 CIT 181, 190 (1981)). Here the lack of complete factual basis, i.e., the incomplete financial statement of TATA, is made all the more egregious by the acknowledged existence, on the record in Cold Rolled II, of TATA's complete financial statement.

13

Defendant frames one issue for review as follows: "whether Commerce's determination that the surrogate market company did not self-produce electricity, based upon the partial financial statement upon the record of this segment of proceedings, is supported by substantial evidence." Defendant's Response at 2. Evidence cannot be substantial if Commerce is aware that the conclusion it supports is false. See Budd Co. Ry. Div., 1 CIT at 70-76. Commerce attempts to justify its position by stating that: "[t]he source of the information from the Cold-Rolled II investigation is the complete 2000-2001 TATA financial statement. The complete TATA financial statement for 2000-2001 is not on the record of the present case." Remand Results at 12. Commerce also argues that it was the Plaintiffs' failure to place TATA's full financial statement on the record that causes them now to bear the consequences of its omission. Defendant's Response at 11 (citing Mannesmannreohren-Werke AG v. United States, 120 F. Supp. 2d 1075, 1085 (CIT 2000)). This argument ignores both this court's holding in Anshan I and Commerce's statutory obligation to use the best available information. See 19 U.S.C. 1677b(c)(1) (1999).

Once again this court finds that "deference is not owed to a determination that is based on data the agency generating those data indicates are incorrect." Anshan I, Slip. Op. 03-83 at 16, n. 7 (citing Union Camp Corp., 23 CIT at 278). Although the court took explicit notice of the information at issue in Anshan I, Commerce states that because the court did not order the record to be reopened, it must rely upon the record evidence limited to this case. Defendant's Reply at 11. In order to make the matter clear, the court will now order the record re-opened and the entire TATA financial statement for 2000-2001 admitted. Accordingly, Commerce's Remand Results are remanded on the issue of valuation of factors of production.

14

**B**
**Commerce's has Adjusted Plaintiff Baosteel's Factors of Production for Defective Hot-Rolled Sheets and is Now In Accordance With Law.**

In Anshan I, this court instructed Commerce to "adjust Plaintiff Baosteel's factors of production calculations in order to reflect Commerce's decision not to treat Baosteel's defective sheets as a byproduct." Anshan I, Slip. Op. 03-83 at 34. The parties do not now contest that Commerce has complied with this instruction, and thus Remand Results are affirmed as to this issue.

**V**
**Conclusion**

The court has found no reasonable basis for failure to consider TATA's complete financial statement. Defendant having disregarded the court's previous order, Defendant is hereby directed to reopen the record of this case, admit TATA's complete financial statement, and consider that information in its redetermination. Upon consideration of TATA's complete financial statement, Commerce is hereby once again directed to reconsider its factors of production analysis by either providing an adequate explanation for what the court has herein found to be a deviation from previous practice, or assigning surrogate values to Plaintiffs' factors of production for their self-produced intermediate inputs. If Commerce concludes that the value obtained from reliance upon Plaintiff's values for its factors of production for self-produced intermediate inputs would not fulfill its statutory obligation to use the best available information, it must specifically describe how the information is unreliable.

15

Thus, if Commerce again finds that, even in light of the complete financial statement for TATA from 2000-2001, it is appropriate to deviate from its established practice, it must address the analysis set forth in Frozen Fish from Vietnam. To this end, Commerce must state whether and how the facts in this case lead to the conclusion that either (a) as in Coumarin from China, the percentage of self-produced intermediate inputs valued directly is insignificantly small so as to make the choice not to value the factors that went into those inputs irrelevant, or (b) as in Cold Rolled I and Steel Beams the accuracy of the evidence could not be determined or there was no evidence that the surrogate country self-produced inputs.

For the foregoing reasons, the Court remands this case for action in accordance with this opinion.

/s/ Evan J. Wallach
Evan J. Wallach, Judge

Dated: September 22, 2004
New York, New York