**Slip Op. 08-83**

# UNITED STATES COURT OF INTERNATIONAL TRADE

HUVIS CORPORATION,

                Plaintiff,

      v.

UNITED STATES,

                Defendant,

      and

DAK FIBERS, LLC and WELLMAN, INC.,

                Defendant-Intervenors.

NONCONFIDENTIAL VERSION

**BEFORE: GREGORY W. CARMAN, JUDGE**

Court No. 06-00380

[*Commerce's Remand Results sustained; Plaintiff's Motion for Oral Argument denied.*]

McDermott Will & Emery LLC (Raymond P. Paretzky and Michael P. House) for Plaintiff.

Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Stephen C. Tosini) for Defendant.

Mark B. Lehnardt, of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for Defendant.

Kelley Drye Collier Shannon (David C. Smith, Jr. and Paul C. Rosenthal) for Defendant-Intervenors.

August 5, 2008

**OPINION**

**CARMAN, JUDGE:**  This case returns to the Court following a remand to the United States Department of Commerce pursuant to the Court's order in <u>Huvis Corp. v. United States</u>, 31 CIT __, 525 F. Supp. 2d 1370 (2007).  In that order, the Court remanded the final results of the fifth administrative review of the antidumping order on polyester staple fiber ("PSF") from Korea, covering the 2004-2005 period of review, in which Commerce applied facts available to fill in missing market price data for certain inputs purchased by Huvis.  <u>See</u> <u>Certain Polyester Staple Fiber from Korea</u>, 71 Fed. Reg. 58,581 (Dep't Commerce Oct. 4, 2006) and the accompanying Issues and Decision Memorandum (Sept. 28, 2006) (collectively, "Final Results").  The Court held that, although Commerce's decision to use facts available was permissible under the applicable statute—called the "Major Input Rule"—and the facts selected were supported by substantial evidence on the record, Commerce did not adequately explain why it used facts available to fill in the missing market price data, when it had not done so in prior administrative reviews.  On remand, Commerce gave a reasoned explanation for the change in treatment, and the Court therefore sustains the remand results.

## BACKGROUND

This case involves Commerce's application of the Major Input Rule. The Major Input Rule provides that when a respondent purchases a major input from an affiliated supplier, as Huvis did here, Commerce will compare the price paid by the respondent to the affiliated supplier (called the "transfer price") to (a) the price at which the supplier sells the input to unaffiliated buyers ("market price"), and (b) the supplier's cost of producing the input. See 19 U.S.C. § 1677b(f)(2) and (3) (2000). The Major Input Rule is used to evaluate whether the sale of a major input between affiliated parties is made at arm's-length, and Commerce has interpreted the statute to allow the agency to select as the value of a major input the highest of transfer price, market price, or cost of production. 19 C.F.R. § 351.407(b) (2005); see also NTN Bearing Corp. of Am. v. United States, 368 F.3d 1369, 1376 (Fed. Cir. 2004) (affirming that Commerce's interpretation is reasonable).

In the administrative review underlying this case, market price data were not on the record for two of the major inputs purchased by Huvis and used to manufacture PSF during the period of review: qualified-grade terepthalic acid (QTA), and purified terepthalic acid (PTA).[1] Commerce therefore used the facts otherwise available on the

---

[1]Huvis explained to Commerce why it was unable to supply market price data: Huvis's affiliated supplier was not willing to provide Huvis with market price information because it considered the data proprietary, and Huvis could not force the

(continued...)

record to fill in a market price for those two major inputs. To do that, Commerce added together for each major input the cost of production for that input and an amount for profit. The affiliated supplier's cost of production data were submitted by Huvis, and the amount for profit was derived from the affiliated supplier's submitted financial statements. Because the facts available market price for QTA and PTA was higher than each major input's transfer price, Commerce upwardly adjusted the value of each input to reflect the calculated market price.

Huvis filed suit challenging Commerce's decision to use facts available to fill in the missing market prices for QTA and PTA, arguing that Commerce's decision to use facts available was inconsistent with the agency's treatment of Huvis in prior administrative reviews. Huvis contended that market price data were not on the record in prior administrative reviews, and that, in those prior administrative reviews, Commerce, rather than applying facts available to fill in missing market prices, applied the Major Input Rule by comparing only transfer price and cost of production.

The Court agreed that Commerce treated Huvis differently than it had in prior administrative reviews, and concluded that because Commerce did not adequately explain why it had changed course here, the results of the administrative review were not in accordance with law. The Court therefore remanded the Final Results so that

[1](...continued)
supplier to provide the data because Huvis did not exercise control over the supplier.

Commerce could explain the reasons for its change in treatment of Huvis. On remand, Commerce was forthcoming about the reason for the change in methodology. Commerce stated that during the fifth administrative review, the agency

> recognized, for the first time, that there was evidence on the record that could be used to construct a market price for QTA. Specifically, Commerce determined that it could construct a market price for QTA by addition an amount for profit, derived from the financial statements of Huvis's affiliated supplier, to the supplier's reported cost of producing QTA. Commerce determined that using this methodology would provide a more complete analysis under the major input rule, and result in a more accurate calculation of Huvis's dumping margin. . . . [In addition,] Commerce determined that the new methodology could and, for consistency, should be used to calculate a market price for PTA as well.

(Redetermination Pursuant to the Court Remand ("Remand Results") 8.)

## DISCUSSION

The primary issue on remand is whether Commerce adequately explained its decision to use facts available in applying the Major Input Rule to Huvis, when the agency had not done so in prior administrative reviews. However, first, the Court will address Huvis's secondary argument that Commerce's use of facts available to fill in the missing market price is "demonstrably and significantly <u>less accurate</u>" than Commerce's prior methodology, which was to compare only transfer price and cost of production to test the arm's-length nature of Huvis's purchases of QTA and PTA. (Comments of Pl. Huvis Corp. on Def.'s Redetermination Pursuant to Court Remand

13.)  As proof that the new methodology is less accurate, Huvis states that "the record establishes (1) that QTA is the least pure—and thus least expensive and [least] valuable—of the three types, or grades of TPA [terepthalic acid], (2) that PTA is the purest and thus most expensive and valuable, and (3) that MTA . . . is in the middle." (Id. at 14.)  However, Huvis continues, "Commerce's methodology resulted in a fictitious 'market price' for QTA that is substantially higher than the amount Huvis actually paid for any TPA input, even PTA, a grade verified as the highest quality and most valuable of all TPAs."  (Id. at 16.)

In response, Commerce states that it believes "the calculation methodology used for the derived market prices for QTA and PTA [to be] outside the scope of this remand as the Court affirmed Commerce's methodology [in the first opinion]."  (Remand Results 15.)  Commerce is correct that—after considering an argument similar to the one made by Huvis here—the Court held in the first opinion that Commerce's use of facts available to fill in the missing market price data was supported by substantial evidence.[2]

---

[2]Huvis argued that the facts available market prices calculated by Commerce were "highly adverse."  (Br. of Pl. Huvis Corp. in Supp. of Pl.'s Mot. for J. upon the Agency R. 33.)  Huvis stated that, although "the record establishes that QTA . . . is the least expensive of the three types, or grades, of TPA ," the calculated market price of QTA "was substantially higher than the verified market price for MTA, a purer, more valuable grade."  (Id. at 33, 35.)  Huvis's challenge rests on the assumption that the lower level of impurities present in MTA as compared to QTA necessarily result in MTA having a higher market price than QTA.

In response, the Government stated that "Huvis identifie[d] no record evidence

(continued...)

See <u>Huvis I</u>, 31 CIT at __, 525 F. Supp. 2d at 1376-77. As a result, the accuracy of

Commerce's methodology was not remanded to Commerce, and is not properly before

the Court now.

### I. Commerce's Explanation is Sufficient.

With that issue disposed of, the Court turns to Commerce's explanation for its

change in treatment of Huvis. As in prior administrative reviews, Huvis submitted

transfer price and cost of production data, but not market price data, for its major inputs

QTA and PTA. In prior administrative reviews, Commerce had tested the arm's-length

---

[2](...continued)
supporting the notion that MTA's lower level of impurities means that it must have a higher market price than QTA." (Defendant's Resp. to Pl.'s Mot. for J. upon the Admin. R., Confid. Version, 16.) The Government claimed that record evidence actually undermined Huvis's argument.

Specifically, Huvis reported the {
} This {

} Because {
}

(<u>Id.</u>) The Government offered a few characteristics of the inputs, other than impurity levels, that affect price: {

} (<u>Id.</u>)

Given the evidence cited by the Government, the Court was not persuaded by Huvis's claim that the facts available market prices for QTA and PTA were not supported by substantial evidence on the record. In affirming Commerce's authority to use the facts available market prices, the Court highlighted that the data used to calculate the market prices were contemporaneous to the period of review, and that the methodology of adding together the cost of production and a profit margin is analogous to that used to construct the value of merchandise pursuant to 19 U.S.C. § 1677b(e) (2000). See <u>Huvis I</u>, 31 CIT at __, 525 F. Supp. 2d at 1376.

nature of the sales from the affiliated supplier to Huvis by comparing the transfer price to the supplier's cost of production. During this administrative review, however, Commerce calculated a proxy market price for each major input using the facts otherwise available on the record. Commerce then compared the transfer price to both the cost of production and the calculated market price, and, finding the calculated market price higher than the other two values, upwardly adjusted the values of both inputs to reflect the higher market price.

To explain the change in treatment, Commerce said that it "recognized, for the first time, that there was evidence on the record that could be used to construct a market price for QTA [and PTA]. Specifically, Commerce determined that it could construct a market price for QTA [and PTA] by adding an amount for profit, derived from the financial statements of Huvis's affiliated supplier, to the supplier's reported cost of produc[tion]." (Remand Results 8.) Commerce stated that it "determined that using this methodology would provide a more complete analysis under the major input rule, and result in a more accurate calculation of Huvis's dumping margin." (Id.)

Commerce's explanation did not satisfy Huvis, who contends that there are no new circumstances in the fifth administrative review to justify treating Huvis differently: the same market price data absent from the record in the fifth administrative review were also missing in prior administrative reviews, and Commerce did not use

facts available to fill in the values. Huvis essentially argues that because the facts did not change, neither can Commerce's methodology.

Huvis's argument, however, ignores the well-settled principal that an agency like Commerce is generally free to change its methodology to improve accuracy. SKF USA Inc. v. United States, 31 CIT __, __, 491 F. Supp. 2d 1354, 1362 (2007) ("[I]t is within Commerce's expertise and discretion to update its methodology for both increased accuracy and ease of use."); Anshan Iron & Steel Co., Ltd. v. United States, 28 CIT 1728, 1735, 358 F. Supp. 2d 1236, 1242 (2004) ("Commerce is generally at liberty to discard one methodology in favor of another where necessary to calculate a more accurate dumping margin . . . .") (citations omitted); Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States, 25 CIT 1150, 1170, 178 F. Supp. 2d 1305, 1327 ("As a rule, Commerce is free to discard one methodology in favor of another, the better to calculate more accurate dumping margins.") (citation omitted); cf., Thai Pineapple Canning Indus. Corp. v. United States, 273 F.3d 1077, 1085 (Fed. Cir. 2001) ("[W]hile various methodologies are permitted by statute, it is possible for the application of a particular methodology to be unreasonable in a given case where a more accurate methodology is available and has been used in similar cases.").

Huvis naturally disagrees with Commerce's assertion that the new methodology improves accuracy, but—in the face of the evidence cited by Commerce, see footnote 2,

supra—its protestations will not carry the day. Commerce's regulations instruct that when applying the Major Input Rule, Commerce will compare all three values of transfer price, cost of production, and market price. 19 C.F.R. § 351.407(b). Commerce also made clear in the initial antidumping duty investigation on PSF from Korea that it would use its facts available authority to fill in missing values, so long as there was reasonable, non-adverse data on the record to do so. Issues & Decision Mem. for the Final Det. in the Antidumping Duty Investigation of Certain PSF from the Republic of Korea (Dep't Commerce Mar. 22, 2000), Comment 6, available at http://ia.ita.doc.gov/frn/summary/korea-south/00-7926-1.txt (last visited Aug. 4, 2008). It appears from Commerce's explanation in the Remand Results that the agency did not realize that there was such information on the record until this administrative review. But now that Commerce has realized that it is possible to calculate a proxy market price using the facts available on the record, the Court will not force Commerce to ignore that capability and use a less-preferable methodology. Accordingly, the Court holds that Commerce has adequately justified its decision to apply facts available to Huvis.

The situation might be different if Huvis could establish that it had detrimentally relied on Commerce's prior practice of using transfer price and cost of production data alone. This is because "Commerce may not make minor disruptive changes in methodology where a respondent demonstrates its specific reliance on the old

methodology used in multiple preceding reviews." Fujian Mach. & Equip., 25 CIT at

1169, 178 F. Supp. 2d at 1327.  For example, in Shikoku Chems. Corp. v. United States,

16 CIT 382, 795 F. Supp. 417 (1992), the court remanded Commerce's decision to use a

new methodology that arguably slightly increased accuracy where Commerce had

applied the previous methodology in multiple prior proceedings, and where the

respondent had altered its business model in reliance on the previous methodology.

Shikoku, 16 CIT at 386-89, 795 F. Supp. at 420-22.  However, for the Shikoku rule to

apply, the party claiming the benefit of it must show detrimental reliance on the

previous methodology.  NSK Ltd. v. United States, 21 CIT 617, 639, 969 F. Supp. 34, 56

(1997).  Huvis's downfall is that it cannot show such detrimental reliance.  The reason

that Huvis did not report market price data to Commerce was that Huvis was

powerless to force its affiliated supplier to provide such data, or at least Huvis

represented as much to Commerce.  Therefore, the absence of market price data from

the record was not the result of Huvis's reliance on Commerce's prior practice; rather, it

was due to its affiliated supplier's intransigence.  As a result, Huvis cannot rely on the

Shikoku rule to prevent Commerce from changing course.

## Conclusion

In the Remand Results, Commerce adequately explained its decision to change course and use its facts available authority to fill in the record with market price data. As a result, the Court sustains the Remand Results as being supported by substantial evidence and otherwise in accordance with law. In addition, the Court denies Huvis's motion for oral argument. The Court will issue judgment separately.

__/s/_Gregory_W._Carman__
Gregory W. Carman

Dated: August 5, 2008
New York, New York