Slip Op. 09-145

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

HOME PRODUCTS INTERNATIONAL, INC.,

                    Plaintiff,

      v.

UNITED STATES,

                   Defendant.

</td><td>

Before: Leo M. Gordon, Judge

Court No. 08-00094

</td></tr>
</table>

**OPINION**

[Final administrative review results sustained.]

Dated: December 17, 2009

     Blank Rome LLP (Frederick L. Ikenson, Larry Hampel), for Plaintiff Home Products International, Inc.

     Tony West, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Carrie Anna Dunsmore); and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Thomas M. Beline), of counsel, for Defendant United States.

     Garvey Schubert Barer (Ronald M. Wisla, William E. Perry, Lizbeth R. Levinson), for Defendant-Intervenor Since Hardware (Guangzhou) Co., Ltd.

     Gordon, Judge: This action arises from the second administrative review of the antidumping duty order covering floor-standing metal-top ironing tables from the People's Republic of China. See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China, 73 Fed. Reg. 14,437 (Dep't of Commerce Mar. 18, 2008) (final results admin. review) ("Final Results"), and accompanying Issues and Decision Memorandum for Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China, A-570-888

(March 10, 2008), available at http://ia.ita.doc.gov/frn/summary/PRC/E8-5415-1.pdf

("Decision Memorandum") (last visited Dec. 17, 2009) (Pub. Doc. 77).[1]  Home Products

International, Inc. ("Home Products") moves for judgment on the agency record

pursuant to USCIT Rule 56.2 challenging the Final Results,  The court has jurisdiction

pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C.

§ 1516a(a)(2)(B)(iii) (2006),[2] and 28 U.S.C. § 1581(c) (2006).

**I. Standard of Review**

For administrative reviews of antidumping duty orders, the court sustains

determinations, findings, or conclusions of the U.S. Department of Commerce

("Commerce") unless they are "unsupported by substantial evidence on the record, or

otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  More specifically,

when reviewing agency determinations, findings, or conclusions for substantial

evidence, the court assesses whether the agency action is reasonable given the record

as a whole.  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51

(Fed. Cir. 2006).  See also Dorbest Ltd. v. United States, 30 CIT 1671, 1675-76,

462 F. Supp. 2d 1262, 1268 (2006) (providing a comprehensive explanation of the

standard of review in the nonmarket economy context).  Substantial evidence has been

described as "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  Dupont Teijin Films USA v. United States,  407 F.3d 1211,

---

[1] Documents in the administrative record are identified as "Pub. Doc." (for a public document) or "Confid. Doc." (for a confidential document), followed by the document number.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

1215 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review.   3 Charles H. Koch, Jr., Administrative Law and Practice § 10.3[1] (2d. ed. 2009).   Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  Edward D. Re, Bernard J. Babb, and Susan M. Koplin, 8 West's Fed. Forms, National Courts § 13342 (2d ed. 2009).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. Dupont, 407 F.3d at 1215 (Fed. Cir. 2005). "[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under Chevron." Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 2001).

## II. Background

In the Final Results Commerce calculated a final dumping margin for respondent, Since Hardware (Guangzhou) Co., Ltd. ("Since Hardware"), of 0.34 percent (de minimis) ad valorem.  Final Results, 73 Fed. Reg. at 14,438.  Home Products challenges

Commerce's use of the complete 2004-2005 financial statements from Infiniti Modules, Pvt. Ltd. ("Infiniti Modules") as the surrogate for valuing factory overhead, selling, general, and administrative expenses ("SG&A"), and profit, rather than the more contemporaneous, but less complete, 2005-2006 Infiniti Modules financial statements.

Because China is a nonmarket economy country, Commerce gathered surrogate data from market economy sources and used a factors of production methodology to construct normal value. Commerce invited parties to submit publicly available information for purposes of valuing the factors of production. Home Products submitted Indian financial statements from Infiniti Modules for the 2004-2005 fiscal year and the 2005-2006 fiscal year, as well as financial statements from Agew Steel Manufacturers Private Limited ("Agew Steel") for the 2004-2005 fiscal year. Pub. Doc. 29. Home Products requested that Commerce rely on the 2004-2005 Agew Steel financial statements and utilize the 2005-2006 Infiniti Modules's profit ratio in lieu of Agew Steel's negative profit ratio to calculate factory overhead, SG&A, and profit. Id. Home Products also submitted allocation schedules based on the data available in the Infiniti Modules 2005-2006 financial report.

On September 11, 2007, Commerce published its preliminary results of the review. Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China, 72 Fed. Reg. 51,781 (Dep't of Commerce Sept. 11, 2007) (prelim. results admin. review) ("Preliminary Results") (Pub. Doc. 62). Commerce preliminarily valued the surrogate financial ratios of factory overhead, SG&A, and profit using the 2004-2005 Infiniti Modules financial statements. Commerce explained that

the 2004-2005 Infiniti Modules financial statements are complete, publicly available, and reflect merchandise comparable to ironing tables. Preliminary Results, 72 Fed. Reg. at 51,786. Specifically, Commerce found that the Infiniti Modules 2005-2006 financial statements and Agew Steel 2004-2005 financial statements were missing profit and loss statements. Id. Thus, Commerce determined that the Infiniti Modules 2004-2005 financial statements represented the best information on the record to value Since Hardware's factors of production. Id.

Following Commerce's publication of the Preliminary Results, Home Products submitted its case brief and contended that the absence of profit and loss statements from the Infiniti Modules 2005-2006 financial statements and the Agew Steel 2004-2005 financial statements does not render those statements less reliable than the non-contemporaneous Infiniti Modules 2004-2005 financial statements, which do include a profit and loss statement. Pub. Doc. 66, Confid. Doc. 16. Specifically, Home Products argued that Commerce should have extrapolated all of the necessary information from the 2005-2006 Infiniti Modules financial statements, and that in any event, because the financial statements contained an auditor's stamp, the data detailed in the attached schedules must be accurate. Id.

On March 10, 2008, Commerce published the Final Results. Commerce found that the 2004-2005 Infiniti Modules financial statements are the best source of data available upon the record because they are complete, publicly available, and based upon comparable merchandise to ironing tables. Decision Memorandum at 6-9 (Cmt. 1). Commerce explained:

While the missing P&L statement alone may not be dispositive, the Department agrees with Since Hardware that the proprietary nature of the statement suggests that there may be information on the P&L statements that is not reported in the supporting schedules, and thus raises concerns as to whether the portions of the 2005–2006 financial statement on the record provide the Department with all the necessary information. The P&L (or income statement) is internationally recognized as one of three major financial statements included in a financial report, and is used to report all revenues and expenses over a period of time. The P&L statement typically provides an itemization of all aggregated revenues and expenses, but certain incomes and expenses listed on the P&L statement often may not have supporting schedules, as recognized by petitioner in its rebuttal comments regarding the Delite Kom financial statements. Thus, without the P&L statement for the 2005–2006 Infiniti Modules financial statements, the Department is unable to confirm whether all revenues/expenses associated with the production of the comparable merchandise have been properly included in the surrogate financial ratio.

Furthermore, in allocating incomes and expenses for the purpose of deriving the surrogate financial ratios, it is the Department's standard practice to reconcile all of the company's revenues and costs (irrespective of its relationship to the subject merchandise), such that the total of the reported income statement amounts sum to (approximately) zero, allowing only for minor rounding errors. The Department notes, however, that based on petitioner's allocation of the reconstructed financial statements from the 2005–2006 Infiniti Modules sub-schedules, the total income figure (profits including revenue) exceeds the total expenses by several hundred rupees, further suggesting that the P&L statement may contain non-public, yet relevant information to the Department's calculation. While the discrepancy of several hundred rupees may seem relatively small, the magnitude of the discrepancy suggests that it is not due merely to a rounding error, and thus, suggests that there may be potential revenues and expenses on the P&L statement that were not reported in supporting sub-schedules. Specifically, although the figure appears relatively small, the Department finds that it could represent a "netted" amount of undisclosed revenues and expenses that were reported on the P&L statement, and not detailed in sub-schedules. As such, the P&L statement is vitally important to the Department's analysis, because the Department must assess the level to which the information contained in the financial statement includes income and expenses not associated with the production of the comparable merchandise. Without the P&L statement, the Department is unable to conduct this analysis or corroborate the completeness of the income and expenses reported in the

financial reports sub schedules.   In contrast, because the 2004–2005 Infiniti Modules financial statements on the record include a P&L statement, the Department is able to analyze and corroborate all of the income and expenses listed on the P&L statement and can accurately allocate all incomes and expenses accordingly.

We note that petitioner is correct that in other reviews, the Department has occasionally relied upon incomplete financial statements to derive surrogate financial ratios.   However, the Act requires the Department to determine the surrogate financial ratios based on the best available information on the record.   *See* section 773(c)(1) of the Act.   Thus, the Department evaluates the best available surrogate information on a case by case basis, and in each case, the Department must evaluate among the surrogate value sources placed on the record to determine which constitutes the most comparable, and accurate information.   Thus, the lack of the P&L statement from the financial report may not always invalidate the financial statement as a potential surrogate source if no more reliable options are available.   In this case, however, the Department finds, for the reasons discussed above, that in comparing the 2005–2006 Infiniti Modules with the more complete 2004–2005 Infiniti Modules financial statements, the 2004–2005 Infiniti Modules financial statements are wholly publicly available and thus more reliable and complete.

Decision Memorandum at 7-8 (Cmt. 1) (footnotes omitted).

### III. Discussion

During the administrative review Commerce had a choice among several Indian financial statements to calculate financial ratios.   Commerce's choice of the best available financial statements is guided by a regulatory preference for publicly available information.   19 C.F.R. § 351.408(c)(4) (2006).   Beyond that, Commerce considers several factors in choosing the most appropriate surrogate value, including the quality, specificity, and contemporaneity of the data.   See Dorbest, 30 CIT at 1716, 462 F. Supp. 2d at 1301 (citing Fresh Garlic from the People's Republic of China:Final Results of Antidumping Duty New Shipper Review, 67 Fed. Reg. 72,139 and

accompanying Issues and Decision Memorandum, A-570-831, available at http://ia.ita.doc.gov/frn/summary/prc/02-30771-1.pdf (last visited Dec. 17, 2009) at 27 (Cmt. 6) (Dep't of Commerce Dec. 4, 2002); see also Zhenjiang Native Produce & Animal By-Products Imp. & Exp. Group, Corp v. United States, 32 CIT ___, Slip Op. 08-68 (June 16, 2008) (affirming Commerce's announced methodology to find the best available information). Commerce prefers publicly available information and country-wide data, but relies upon company-specific and/or regional information when country-wide data are unavailable. Freshwater Crawfish Tail Meat from the People's Republic of China, 66 Fed. Reg. 20,634 (Dep't of Commerce Apr. 24, 2001) (final results admin. review), and accompanying Issues and Decision Memorandum, A-570-848, available at http://ia.ita.doc.gov/frn/summary/prc/01-10152-1.txt (last visited Dec. 17, 2009) (Cmt. 2).

Commerce determined that the Infiniti Modules 2004-2005 financial data were the best available information to calculate the surrogate financial ratios for the Final Results. Commerce found the Infiniti Modules 2004-2005 data to be an appropriate surrogate value source because: (1) they are publicly available; (2) they are complete with all auditors' stamps and schedules, as well as a complete balance sheet and profit and loss statement; and (3) they are based upon comparable merchandise to ironing tables. See Preliminary Results, 72 Fed. Reg. at 51,786. Additionally, Commerce determined that although the Infiniti Modules 2005-2006 data were more contemporaneous with the period of review, neither those financial statements nor the Agew Steel 2004-2005 data included publicly available profit and loss statements.

This decision is reasonable given the administrative record. See Home Prods. Int'l, Inc. v. United States, 32 CIT ___, ___, 556 F. Supp. 2d 1338, 1342 (2008) ("Commerce's choice is guided by a general regulatory preference for publicly available information."); see also Hebei Metals & Minerals Import & Export Corp. v. United States, 29 CIT 288, 301, 366 F. Supp. 2d 1264, 1275 (2005) ("[W]hile the contemporaneity of data is one factor to be considered by Commerce . . . contemporaneity is not a compelling factor where the alternative data is only a year-and-a-half from the [period of investigation].").

In its brief Home Products argues that Commerce's reliance on the 2004-2005 Infiniti Modules Financial Statement was unreasonable. First, Home Products contends that Commerce has previously relied upon incomplete financial statements in other administrative reviews to calculate surrogate financial ratios, and argues it should do so in this matter. Br. of Home Products in Supp. of Mot. for J. on Agency Rec. ("Pl.'s Br.") at 13-14. In the Final Results Commerce freely acknowledged that it has, from time to time, utilized incomplete financial statements, including ones that do not contain a profit and loss statement. Decision Memorandum at 8 (Cmt. 1). As Commerce explained in the Final Results, however, the profit and loss statement was "vitally important" for the Final Results because Commerce had to assess the level to which information contained in the financial statement included income and expenses not associated with the production of comparable merchandise. Id.

Where, as here, there is on the record a complete and publicly available financial statement with an attached profit and loss statement upon which to value factory overhead, SG&A, and profit, selecting a less complete and proprietary financial

statement would be questionable, if not unreasonable. This is especially true here where Commerce noted the existence of a discrepancy of several hundred rupees between the total income and the total expenses. Commerce reasonably determined that the profit and loss statement might contain information to explain this discrepancy. It was therefore reasonable for Commerce to conclude that the absence of the profit and loss statement justified the use of slightly less contemporaneous, but nonetheless complete and publicly available, financial statements as the best available information. See Dorbest, 30 CIT at 1675, 462 F. Supp. 2d at 1268 ("The term 'best available' is one of comparison, i.e., the statute requires Commerce to select, from the information before it, the best data for calculating an accurate dumping margin. . . . This "best" choice is ascertained by examining and comparing the advantages and disadvantages of using certain data as opposed to other data.").

Second, Home Products contends that Commerce acted unreasonably in concluding that the discrepancy between total income and total expenses in Home Products' allocation of the Infiniti Modules 2005-2006 financial statements gives rise to an inference that the missing profit and loss statement contains nonpublic, yet relevant information. Pl.'s Br. at 14-15. Home Product claims that Commerce rejected the financial statements on mere speculation. Id.

Home Products was the party responsible for presenting profit from the Infiniti Modules 2005-2006 financial statement as it was reported, in thousands of rupees, on the nonpublic audited balance sheet, thereby creating the apparent discrepancy. Pl.'s Br. at 14. Home Products did not provide to Commerce a reason for the

discrepancy. In its brief before the court, Home Products explains for the first time that the discrepancy was apparently caused by rounding errors. Having failed to raise this explanation before Commerce, Plaintiff may not raise it now. This is precisely the sort of argument for which exhaustion of administrative remedies is appropriate; had Home Products presented the rounding errors explanation directly to Commerce at the time of the administrative review, the twin purposes of the doctrine of exhaustion of administrative remedies would have been served, protecting administrative agency authority and promoting judicial efficiency. Carpenter Tech. Corp. v. United States, 30 CIT 1373, 1374-75, 452 F. Supp. 2d 1344, 1346 (2006) (citing Woodford v. Ngo, 548 U.S. 81, 89 (2006)); see also Aimcor v. United States, 141 F.3d 1098, 1111-12 (Fed. Cir. 1998) (citing 28 U.S.C. § 2637(d) (1994)) (holding respondent was precluded from raising this issue before the court when it failed to present the issue during the applicable comment period); Paul Muller Industrie Gmbh & Co. v. United States, 31 CIT ___, 502 F. Supp. 2d 1271 (2007) (raising general issues not adequate to apprise Commerce of what it would need to specifically respond to).

On the question of the inferences the Commerce may draw from the record evidence, Home Products contends that Commerce may not reject financial statements that contain a discrepancy of Home Products' creation. The court concurs with Defendant, however, that it would have been questionable for Commerce to use a financial statement with such an unexplained discrepancy (that was aggressively challenged by respondent) without ascertaining what caused that discrepancy. The discrepancy could not be explained by the information available on the record, and

Commerce was therefore free to exercise its fact-finding discretion to draw reasonable inferences from the administrative record in selecting the best available information. As Commerce explained in the Final Results, the total income figure exceeded the total expenses by several hundred rupees and that difference suggested that nonpublic, yet possibly relevant information, existed on the profit and loss statement. Decision Memorandum at 8 (Cmt. 1). To put it simply, Commerce may select as the best available information financial statements with no such unexplained discrepancies to calculate a surrogate value ratio. See Wuhan Bee Healthy Co. v. United States, 29 CIT 587, 599, 374 F. Supp. 2d 1299, 1309 (2005) (Commerce justified in selecting financial statement when alternative contained irregularities and discrepancies).

Finally, Home Products contends that the court should exercise its discretion and take judicial notice that the nonpublic and incomplete Infiniti Modules 2005-2006 financial statements have since become publicly available and have been used by Commerce in calculating factory overhead, SG&A expenses, and profit in the subsequent preliminary results of the third administrative review. Pl. Br at 15; Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China, 73 Fed. Reg. 52,277, 52,281 (Dep't of Commerce Sept. 9, 2008) (prelim. results admin. review). The court declines the invitation to go beyond the administrative record under review. "It is black letter law that, except in the rare case, review in federal court must be based on the record before the agency and hence a reviewing court may not go outside the administrative record." 2 Charles H. Koch, Jr., Administrative Law and Practice § 8.27 (2d ed. 2009) (emphasis added); 19 U.S.C.

§ 1516a(a)(2) ("Review of determinations on record"); 28 U.S.C. § 2635(b)(1); Beker Indus. Corp. v. United States, 7 CIT 313, 315 (1984) ("[T]he scope of the record for judicial review . . . is confined to the immediate administrative review in dispute.").

The Supreme Court acknowledged in Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 554-555 (1978), the obvious problem of never-ending administrative proceedings and subsequent judicial review caused by extra-record evidence: "'Administrative consideration of evidence . . . always creates a gap between the time the record is closed and the time the administrative decision is promulgated [and, we might add, the time the decision is judicially reviewed]. . . . If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening.'" Vermont Yankee, 435 U.S. at 554-555 (1978) (quoting ICC v. Jersey City, 322 U.S. 503, 514 (1944)) (emphasis added); see also Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1316-17 (Fed. Cir. 2004); but see Anshan Iron & Steel Co. v. United States, 28 CIT 1728, 1734 n.3, 358 F. Supp. 2d 1236, 1241 n.3 (2004) (taking judicial notice of extra-record evidence to invalidate Commerce finding); Borlem S.A.-Empreedimentos Industriais v. United States, 913 F.2d 933, 937 (Fed. Cir. 1990) (upholding court order that International Trade Commission consider extra-record evidence on remand in antidumping injury investigation).

To apply properly the deferential standard of review operating for actions on the agency record under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), actions in which Commerce first exercises primary jurisdiction to render findings, conclusions, and determinations comprising the judicially reviewable final results of an administrative review, the court must avoid the temptation to consult extra-record facts and evidence unfolding in subsequent, ever-evolving administrative reviews of antidumping orders. Armed with the certainty of hindsight, it is all too easy for the court to supplant Commerce as the fact-finder and decision-maker in the administrative proceeding. This case provides an excellent demonstration of that risk. We now know by virtue of what unfolded in the subsequent third administrative review that Commerce's inferences in the second administrative review about the Infiniti Modules 2005-2006 financial statements were incorrect. On the basis of this information the court could easily invalidate Commerce's rejection of those financial statements in the second administrative review. Importantly, however, this does not mean that the inference Commerce made at the time and based on the record of the second administrative review was unreasonable. As explained above, it was, in fact, quite reasonable. Because it was reasonable, the Final Results must be sustained even though the court knows that the underlying inference ultimately proved incorrect in a subsequent administrative review.

## IV. Conclusion

For the foregoing reasons, the court denies Home Products' motion for judgment on the agency record and will enter judgment in favor of Defendant sustaining Commerce's Final Results.


                                            /s/ Leo M. Gordon
                                          Judge Leo M. Gordon


Dated:  December 17, 2009
         New York, New York