# United States Court of Appeals for the Federal Circuit

---

**HOME PRODUCTS INTERNATIONAL, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**and**

**SINCE HARDWARE (GOUANGZHOU) CO., LTD.,**
*Defendant.*

---

2010-1184

---

Appeal from the United States Court of International Trade in case no. 08-CV-0094, Judge Leo M. Gordon.

---

Decided: February 7, 2011

---

FREDERICK L. IKENSON, Blank Rome LLP, of Washington, DC, argued for plaintiff-appellant.

PATRICIA M. MCCARTHY, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were TONY

WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and CARRIE DUNSMORE, Attorney.

_____

Before BRYSON, DYK, and MOORE, *Circuit Judges.*

DYK, *Circuit Judge.*


This case concerns the obligation of a court to remand a case to an administrative agency when new evidence indicates that the agency's proceedings were tainted by material fraud. We hold that the Court of International Trade ("Trade Court") abused its discretion in declining to remand this case to the Department of Commerce ("Commerce"), and accordingly we reverse and remand with instructions that the case be remanded to Commerce for further proceedings consistent with this opinion.

BACKGROUND

I

This case concerns an antidumping duty order issued in 2004 covering floor-standing, metal-top ironing tables and certain parts thereof from the People's Republic of China. Commerce determined that Since Hardware (Gouangzhou) Co., Ltd. ("Since Hardware") and other Chinese exporters were selling ironing tables in the United States at less than fair value, and the International Trade Commission ("ITC") found material injury.[1] Thereafter, in the first and second administrative reviews

_____

[1]    *See Notice of Amended Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China,* 69 Fed. Reg. 47,868 (Dep't of Commerce Aug. 6, 2004) (original antidumping duty order).

of that antidumping order, Commerce calculated dumping margins for Since Hardware of 0.45 percent[2] and 0.34 percent[3] respectively. Because the agency considers dumping margins of less than 0.5 percent to be de minimis, Commerce accordingly did not impose any antidumping duties on Since Hardware for these review periods.

In March 2008, plaintiff-appellant Home Products International, Inc. ("Home Products") initiated an action in the Trade Court challenging the results of Commerce's second administrative review on the grounds that Commerce calculated an improperly low dumping margin. Since Hardware, the respondent in the Commerce proceeding, intervened in support of the government. The sole issue raised in Home Products' complaint was whether Commerce had erred in using a surrogate manufacturer's outdated financial statements to value Since Hardware's factory overhead, administrative expenses, and profit. The Trade Court ultimately rejected Home Products' contentions regarding this issue—a ruling which Home Products does not contest and that is not relevant to the present appeal.

---

[2] *See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China: Final Results and Final Rescission, in Part, of Antidumping Duty Administrative Review*, 72 Fed. Reg. 13,239, 13,241 (Dep't of Commerce Mar. 21, 2007), *as amended*, 72 Fed. Reg. 19,689, 19,690 (Dep't of Commerce Apr. 19, 2007) (first administrative review, covering imports from February 3, 2004, through July 31, 2005).

[3] *See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 14,437, 14,438 (Dep't of Commerce Mar. 18, 2008) (second administrative review, covering imports from August 1, 2005, through July 31, 2006).

   While Home Products' challenge to the second administrative review was pending in the Trade Court, Commerce was conducting its third administrative review of the same antidumping order. *See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*, 74 Fed. Reg. 11,085 (Dep't of Commerce Mar. 16, 2009) [hereinafter *AR3 Final Results*] (covering imports from August 1, 2006, through July 31, 2007). During that proceeding, new evidence was brought to light that indicated Since Hardware had submitted falsified documents to Commerce during the third administrative review. Commerce concluded that the documents were unreliable and inaccurate. Commerce's findings regarding this alleged conduct were detailed in two memoranda that the agency adopted in its final results. *See AR3 Final Results*, at 11086 (adopting *Issues and Decision Memorandum for the Final Results in the Administrative Review of Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China*, available at http://ia.ita.doc.gov/frn/summary/PRC/E9-5627-1.pdf, J.A. 1007–18 [hereinafter *I & D Memo*]; *Since Hardware (Guangzhou) Co., Ltd.'s Claim Regarding Market Economy Purchases, and Use of Adverse Facts Available*, J.A. 1020–38 [hereinafter *AFA Memo*]). Understanding the nature of the alleged falsifications requires a brief overview of certain aspects of antidumping law.

   Dumping occurs when a foreign firm sells a product in the United States at a price lower than the product's normal value ("NV"); the amount by which NV exceeds the U.S. price (the "export price") is the "dumping margin." *See* 19 U.S.C. § 1673. For exporters based in market economy ("ME") countries, NV is generally the price at which the firm sells the product in its home market. *See*

19 U.S.C. § 1677b(a)(1)(B)(i). However, Since Hardware is located in China, a non-market-economy ("NME") country. Where, as here, the exporter is located in an NME country, the default rule is that NV is calculated based on a factors-of-production analysis whereby each input is valued based on data from a surrogate ME country. *See* 19 U.S.C. § 1677b(a)(1)(B)(ii), (c). However, if an NME exporter purchases a portion of a given input from an ME supplier and pays in ME currency, Commerce will generally value that portion of the input according to the actual price paid to the ME supplier (even if the supplier is located in an ME country other than the chosen surrogate country). *See* 19 C.F.R. § 351.408(c)(1). Furthermore, if an NME exporter purchases at least thirty-three percent of a given input from ME suppliers, Commerce will use the weighted-average price of those ME purchases (rather than a surrogate value) to value the remainder of the input purchased from NME suppliers. *See Antidumping Methodologies: Market Economy Inputs, Expected Non-Market Economy Wages, Duty Drawback; and Request for Comments*, 71 Fed. Reg. 61,716, 61,717– 18 (Dep't of Commerce Oct. 19, 2006). In such situations, if the weighted-average ME purchase price is lower than the surrogate value that would otherwise be assigned to an input, the result would be a lower NV and a correspondingly smaller dumping margin.

During the third administrative review, Home Products contended that Since Hardware had submitted falsified certificates of origin to Commerce that inaccurately reported that it had purchased portions of certain steel inputs from ME suppliers. These certificates of origin were material because they made it appear that Since Hardware had purchased more than the key thirty-three percent threshold of the inputs in question from ME suppliers, thereby qualifying the entirety of those inputs

to be valued based on the weighted-average price of Since Hardware's (purported) ME purchases. *See AFA Memo*, at 2; *see also Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 52,277, 52,280 (Dep't of Commerce Sept. 9, 2008) [hereinafter *AR3 Preliminary Results*]. Furthermore, this was significant because the steel inputs in question were "the primary inputs" for producing floor-standing, metal-top ironing tables. *AFA Memo*, at 2. Presumably, Since Hardware's purported ME purchase prices were lower than the alternative surrogate values. This likely allowed Since Hardware to obtain a decreased dumping margin. *See I & D Memo*, J.A. 1015.

As described by Commerce in the third administrative review, the evidence of misrepresentations by Since Hardware in the third administrative review is quite substantial. *See I & D Memo*; *AFA Memo*.

First, the certificates of origin submitted by Since Hardware contained typographical errors that were inconsistent with genuine exemplar certificates of origin supplied by the certifying agency of the purported country of origin. For instance, several words were misspelled, the business identification number of the certifying agency was misprinted, and several phrases were altered in wording. *AFA Memo*, at 3–4, 11.

Second, the certificates submitted by Since Hardware each bore a six-digit alpha-numeric certificate number (e.g., "B6B326"), whereas the official forms employed a basic sequential numbering system (e.g., six numbers, with a single letter suffix). *Id.* at 4, 11.

Third, the date stamp appearing on Since Hardware's certificates differed from the official stamp used by the

certifying agency in that it lacked an official logo and employed a different date format (e.g., the official stamp used a "28 NOV 2006" format, whereas the stamp on Since Hardware's certificates used a "2005. 11. 25" format). *Id.*

Fourth, the signature on Since Hardware's certificates of origin was noticeably different from the actual signature of the corresponding certifying agency official, whose signature was unique. *Id.* at 4–5, 11. Moreover, one of the certificates Since Hardware submitted during the first administrative review was purportedly signed by the same official long before she had even begun her employment with the certifying agency. *Id.* at 5, 11.

Fifth, the amounts of steel reported on Since Hardware's certificates of origin were inconsistent with relevant market data. In particular, Commerce noted that "[n]either the data on steel exports from [the purported country of origin], nor the data on steel imports by [the purported destination country] support the levels of purchases claimed by Since Hardware." *Id.* at 12. In fact, "Since Hardware['s] claimed purchases alone exceed[ed] the total inputs of [the type of steel at issue] shipped to all potential customers in these countries." *Id.*

In light of this evidence, Since Hardware did not argue that the challenged certificates of origin were authentic, but rather attempted to shift blame for the apparent forgeries by arguing that that the certificates of origin were provided to it by its unaffiliated suppliers. *Id.* at 6–7. However, Commerce found this contention to be implausible, as the same falsifications appeared in the certificates purportedly submitted by multiple independent suppliers. *Id.* at 11. "In the absence of any evidence to suggest [its suppliers] collude[d] to provide unreliable certificates," Commerce reasoned, "the most plausible

explanation for these same errors appearing in [multiple] suppliers' documents is that Since Hardware is the source of these inaccuracies." *Id.* at 12. Moreover, "[a]s opposed to its suppliers, Since Hardware ha[d] a strong interest in providing data that would lead the Department to rely upon purported market economy purchases," because this "allow[ed] Since Hardware to control the valuation of . . . key inputs, rather than rely[] on the Department's factors of production" analysis. *Id.*

Commerce ultimately concluded its third administrative review by finding that Since Hardware had "provided unreliable and incomplete documentation in support of its claimed purchases of market economy inputs," and that "these unreliable submissions call[ed] into question the reliability of the questionnaire responses submitted by Since Hardware in [the third administrative review]." *I & D Memo*, J.A. 1012. Because Since Hardware had "failed to cooperate to the best of its ability with respect to its obligation to provide accurate information concerning its market economy purchases," Commerce applied adverse facts available and significantly increased Since Hardware's dumping margin.[4]

---

[4] Commerce apparently applied adverse facts available to both (1) the input valuations for Since Hardware's factors-of-production analysis, given the falsifications concerning materials purportedly purchased from ME suppliers, and (2) Since Hardware's claim of eligibility for separate rate status. *Id.* Finding that Since Hardware did not qualify for separate rate status after applying adverse facts available, Commerce assigned Since Hardware China's country-wide dumping margin of 157.68 percent. *AFA Memo*, at 15–16; *see AR3 Final Results*, at 11086. This made it unnecessary to recalculate input values for a separate rate factors-of-production analysis. Since Hardware appealed this decision.

Finally, of particular importance to the present appeal, Commerce further appeared to agree in the third administrative review that certificates of origin provided by Since Hardware "in the course of the first and second administrative reviews also bore the same set of [discrepancies]" as the certificates it had submitted during the third administrative review. *AFA Memo*, at 5; *see also id.* at 6 ("not[ing] that the same typographical errors noted in the instant review also appear in the certificates of origin submitted by Since Hardware in the first and second administrative reviews"); *id.* at 11 (noting that "one of the certificates on the record in the first administrative review was purportedly signed by a specific . . . official long before she began her employment with the [certifying agency]").

---

While the present appeal from the second administrative review was pending in this court, the Trade Court rendered a decision as to the third administrative review. *See Since Hardware (Guangzhou) Co., Ltd. v. United States*, No. 09-00123, slip op. 10-108 (Ct. Int'l Trade Sept. 27, 2010). The Trade Court affirmed Commerce's application of adverse facts available to the input valuations, *id.* at 18-22, but found it was improper to apply adverse facts available to Since Hardware's responses regarding its eligibility for separate rate status without Commerce first making a specific finding that those responses were inaccurate, *id.* at 15-17. The Trade Court thus remanded to Commerce with instructions to reexamine whether Since Hardware had produced sufficiently reliable evidence to qualify for separate rate status, and, if so, to calculate Since Hardware's separate rate dumping margin using adverse facts available as to its factors of production. *Id.* at 22-23. At this point it is difficult to predict the likely impact of the falsifications on the dumping margin in the third administrative review.

## II

In May 2009, in light of the results of the third administrative review—and in particular Commerce's apparent agreement that the same discrepancies appeared on certificates Since Hardware submitted during the second administrative review—Home Products moved the Trade Court to amend its complaint in its challenge to the second administrative review.[5] It requested that the court remand the case to Commerce for reconsideration in light of the newly discovered evidence of falsification in the second administrative review. The government opposed, arguing that "Home Products' contention that 'newly discovered evidence' exists is not relevant" because "judicial review of antidumping duty administrative reviews is limited to 'review *upon the basis of the record made before the agency* which issued the decision.'" Def.'s Resp. to Pl.'s Mot. to Remand, J.A. 1096 (citation omitted). Considering only the second administrative review record, the government contended, Home Products had failed to show that Commerce's final results were unsupported by substantial evidence. *Id.* at 1095–96. The

---

[5] In its proposed amended complaint, Home Products sought to add a new count to assert the following:

Evidence discovered long after the publication of Commerce's final results indicates that material false documents were willfully submitted to Commerce by Since Hardware during the administrative review. Commerce's final results would likely have been materially different had Commerce been aware, before issuing such determination, that Since Hardware had submitted material false information to it. The case must be remanded so that Commerce may reconsider its determination in light of the newly discovered evidence of material false information willfully submitted by Since Hardware.

J.A. 1004–05.

Trade Court denied Home Products' motions, *see* Memorandum and Order, *Home Prods. Int'l, Inc. v. United States*, No. 08-00094 (Ct. Int'l Trade Dec. 17, 2009) [hereinafter *Trade Court Order*], and thereafter issued a final judgment in the government's favor regarding Home Products' original action, *see Home Prods. Int'l, Inc. v. United States*, 675 F. Supp. 2d 1192, 1200 (Ct. Int'l Trade 2009).

In denying the motions, the Trade Court agreed with the government and "decline[d] Home Products' invitation to go beyond the administrative record under review." *Trade Court Order*, at 10. While its opinion is not entirely clear, it appears that the court was operating under the theory that, because the remand request was not made by Commerce itself, the court was limited to considering evidence found in the record of the second administrative review—the proceeding from which Home Products appealed. *Id.* at 10–11. This necessarily excluded from consideration Commerce's subsequent findings made during the third administrative review and the documents contained in the record of the third administrative review. (The allegedly falsified documents in the second administrative review were, of course, in the second administrative review record.)

The Trade Court further noted that, even if extra-record evidence were to be considered, it disagreed with Home Products' characterization of the third administrative review. First, the court rejected Home Products' contention that Commerce had found "fraud" in the third administrative review, stating that, "contrary to Home Products' contentions, Commerce did not conclude that Since Hardware's submissions provide 'evidence of deception and document falsification.'" *Id.* at 10 (citation omitted). The court apparently based this conclusion on the fact that Commerce had used words such as "unreli-

able" and "inaccurate" to describe Since Hardware's certificates of origin, rather than words such as "false," "forged," or "sham." *Id.* at 9. Second, the Trade Court concluded that Commerce's decision in the third review "did not make any findings about the first and second administrative reviews," and that "Home Products has failed to demonstrate that any false information is even contained in the record of [the second] administrative review." *Id.* at 9–10.

Home Products appealed the Trade Court's decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The question presented here is whether the Trade Court is obligated to remand a decision to Commerce for reconsideration when new evidence comes to light that the agency proceedings under review were tainted by material fraud.

In *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008), we held that Commerce itself has the authority to reopen a proceeding if it later discovers evidence of fraud in the original proceeding. Section 751(b) of the Tariff Act of 1930, codified at 19 U.S.C. § 1675(b), provides for what is known as a "changed circumstances" review. Under that section, Commerce has the statutory authority to reconsider its decisions whenever the agency "receives information . . . which shows changed circumstances sufficient to warrant a review." 19 U.S.C. § 1675(b)(1); *see also* 19 C.F.R. § 351.216. In *Tokyo Kikai*, 529 F.3d at 1357, Commerce itself initiated a changed circumstances review in order to reconsider the results of three yearly administrative reviews in light of new evidence brought to light during a separate district court proceeding that indicated the

respondents' representatives had committed perjury during the agency proceedings. Upon review, Commerce applied adverse facts available and increased the respondents' dumping rate from zero percent to 59.67 percent. *Id.* at 1357–58. The respondents appealed, contesting Commerce's authority to reopen the proceeding and arguing that new evidence of fraud did not fall into the category of "changed circumstances" for which Commerce was authorized to reopen under § 1675(b). *Id.* at 1359–60. The Trade Court sustained Commerce's authority to reopen the proceeding, and we affirmed. *Id.* We agreed that new evidence of fraud did not fit neatly into the category of "changed circumstances," because in such cases "the circumstances that led to the determination have 'changed' only because the true circumstances, previously concealed by fraud, have come to light." *Id.* at 1360. Nonetheless, we held that "administrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." *Id.* Furthermore, we noted that "[a]n agency's power to reconsider is even more fundamental when, as here, it is exercised to protect the integrity of its own proceedings from fraud." *Id.* at 1361.[6]

Thus, *Tokyo Kikai* established that Commerce has inherent authority to reopen a case to consider new evidence that its proceedings were tainted by fraud.

---

[6] *See also Alberta Gas Chems., Ltd. v. Celanese Corp.*, 650 F.2d 9, 13 (2d Cir. 1981) ("It is hard to imagine a clearer case for exercising this inherent power [to reconsider] than when a fraud has been perpetrated on the tribunal in its initial proceeding."); *Elkem Metals Co. v. United States*, 193 F. Supp. 2d 1314, 1321 (Ct. Int'l Trade 2002) ("A finding that the ITC has the authority to reconsider a final determination is particularly appropriate where after-discovered fraud is alleged.").

Strangely, the government argues that Commerce has no authority to consider allegations of fraud.[7]   While the statute does not in terms confer such authority, it is necessarily inherent in the authority of any administrative agency, as our decision in *Tokyo Kikai* makes clear. Contrary to Commerce's argument, the authority to reopen is not limited to cases in which a determination of fraud has been made in a separate proceeding.

We see no reason why similar principles should not govern when fraud is discovered while the agency proceeding is on appeal.   To be sure, Commerce may not reopen a case while it is on appeal until the case has been remanded by the Trade Court.   This has been the consistent practice of Commerce and the Trade Court.[8]   Moreover, it is clear that, by analogy to Federal Rule of Civil Procedure 60(b), Commerce lacks jurisdiction to grant a motion to reopen its proceedings while an appeal is pending.[9]   However, when a case is on appeal, our decisions

[7]   The government argues that "[n]othing in the antidumping statute instructs Commerce to conduct administrative reviews to uncover fraud," and that "Commerce is neither required, nor best situated, to investigate and develop methods to combat instances of fraud in connection with importation of merchandise subject to antidumping and countervailing duties." Appellee's Br. 13.

[8]   *See, e.g.*, *GPX Int'l Tire Corp. v. United States*, 715 F. Supp. 2d 1337, 1350 (Ct. Int'l Trade 2010) (granting Commerce's request for a voluntary remand so that Commerce could reopen the proceeding); *Home Prods. Int'l, Inc. v. United States*, 556 F. Supp. 2d 1338, 1340 (Ct. Int'l Trade 2008) (same); *Dorbest Ltd. v. United States*, 547 F. Supp. 2d 1321, 1337–38 (Ct. Int'l Trade 2008) (same); *Mittal Steel Point Lisas Ltd. v. United States*, 491 F. Supp. 2d 1222, 1232–33 (Ct. Int'l Trade 2007) (same); *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1335–36 (Ct. Int'l Trade 2006) (same).

[9]   Rule 60(b) allows a federal district court to reopen a final judgment to consider, inter alia, "newly discovered

and the decisions of other courts have recognized the appropriateness of a remand to an administrative agency when new and material evidence is presented to the reviewing court and the agency requests a remand for further consideration.[10]

---

evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial," and evidence of "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2)–(3). Rule 60(a) allows a court to correct clerical mistakes in a judgment, order, or other part of the record. Fed. R. Civ. P. 60(a). After an appeal is taken, Rule 60(a) explicitly requires leave of the appellate court to correct clerical mistakes, but Rule 60(b) is silent on the question. Though the courts of appeal have differed on the procedures to be followed regarding Rule 60(b), there is broad agreement that a district court at least lacks the authority to *grant* a motion to reopen while an appeal is pending. *Compare, e.g.*, *Weiss v. Hunna*, 312 F.2d 711, 713 (2d Cir. 1963) (holding that, "once plaintiff had filed a notice of appeal, the district court was divested of jurisdiction to *grant* or *deny* relief under . . . Rule 60(b) except with [the appellate court's] permission.") (emphasis added), *with Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 41–42 (1st Cir. 1979) (holding that a district court may *consider* and *deny* Rule 60(b) motions while an appeal is pending, but may not *grant* them; if a district court is inclined to grant a 60(b) motion, it may issue an informal memorandum stating so, and the interested party may request a remand from the appellate court); *see also* 12 James W. Moore, *Federal Practice* § 60.67[1] (3d ed. 2010); 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2873 (1995).

[10] *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (holding that Commerce may request a remand when it "believes that its original decision was incorrect on the merits and it wishes to change the result"); *Borlem S.A.—Empreedimentos Industriais v. United States*, 913 F.2d 933, 937, 941–42 (Fed. Cir. 1990) (affirming Trade Court's grant of the ITC's motion to

While in this case it was Home Products—rather than Commerce—that requested a remand, we see no reason why parties other than the administrative agency cannot also request reopening or a remand for the consideration of new and material evidence. It is well established that, when an administrative agency denies a party's petition which seeks to "reopen[ a case] on the basis of new evidence or changed circumstances," that decision is reviewable on appeal, and "abuse of discretion is the standard." *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987).[11] So too, a decision of the Trade Court denying a motion by an interested party to remand is subject to judicial review under the abuse of discretion standard. *Diamond Sawblades Mfrs. Coal. v. United States*, 612 F.3d 1348, 1355–56 (Fed. Cir. 2010); *Altx, Inc. v. United States*, 370 F.3d 1108, 1117 (Fed. Cir.

---

remand to the ITC for reconsideration of its determination of material injury in light of Commerce's revised calculated dumping margin, and noting that "Congress' desire for speedy determinations on dumping matters should not be interpreted as authorizing proceedings that are based on inaccurate data"); *see also Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) ("[C]ourts typically grant an agency's motion to remand a case if there has been an intervening change in the law or new evidence."); *Ethyl Corp v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly grant [agencies' motions to remand to consider new evidence], preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.").

[11] *See also* 19 U.S.C. § 1516a(a)(1)(B), (b)(1)(A) (providing that a determination not to conduct a changed circumstances review is reviewable for abuse of discretion); *Avesta AB v. United States*, 914 F.2d 233, 235 (Fed. Cir. 1990) (applying §1516a in reviewing an ITC decision not to institute a changed circumstances review).

2004). The Trade Court has considerable discretion as to whether to order a remand in the particular circumstances of any individual case. That discretion, however, is not unlimited. We hold that, where a party brings to light clear and convincing new evidence sufficient to make a prima facie case that the agency proceedings under review were tainted by material fraud, the Trade Court abuses its discretion when it declines to order a remand to require the agency to reconsider its decision in light of the new evidence. The Trade Court's reasons for refusing to remand here do not withstand analysis.

First, the Trade Court here declined to remand because Home Products' allegations of fraud rested on evidence "beyond the administrative record under review," apparently operating under the theory that its review was confined to the administrative record when Commerce itself had not initiated the remand request. *Trade Court Order*, at 10. It is true that, generally, for a court reviewing an agency decision, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *see also Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009); *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). However, the so-called "record rule" is not without exceptions.[12] As we held in *Borlem*, 913 F.2d at 939, "a review-

---

[12]    *See, e.g.*, *Fla. Power & Light Co.*, 470 U.S. at 744 ("[I]f the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005) (noting that remand to the agency for

ing court is not precluded under [the record rule] from considering events which have occurred between the date of an agency (or trial court) decision and the date of decision on appeal." Where there is new evidence indicating that the original record was tainted by fraud, reopening may be appropriate. For example, in *Doria Mining & Eng'g Corp. v. Morton*, 608 F.2d 1255, 1257–59 (9th Cir. 1979)—a case quite similar to this one—the Ninth Circuit held that extrinsic evidence could be considered when a claimant alleged it had discovered new evidence showing that the decision under review was obtained by fraud in the administrative proceeding. In *Doria*, the claimant sought district court review of a decision of the Interior Board of Land Appeals. *Id.* at 1256. Thirteen months after commencing the review action, the claimant moved for leave to amend its complaint to add allegations that new evidence brought to light in a collateral state proceeding indicated that the respondent had committed fraud and perjury during the administrative proceeding. *Id.* at 1257. The district court denied the motion to amend on the grounds that the court was without jurisdiction to consider evidence not found in the administrative record. *Id.* The Ninth Circuit reversed, stating:

> It is true that the appropriate standard for review of administrative proceedings is whether the administrative findings are supported by substantial evidence in the record as a whole. When, however, the party seeking review alleges that it has discovered new evidence showing that the decision before the court for review was obtained by a fraud on the administrative proceeding, we hold

clarification is proper in the event that the administrative record is found inadequate to permit meaningful judicial review); Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.6 (4th ed. 2009).

that the reviewing court may consider evidence extrinsic to the record in determining whether such allegations are meritorious. . . .

. . . .

. . . Newly discovered evidence of fraud and perjury in an administrative proceeding will not be found in the administrative record. If the reviewing court, in the face of an allegation that such evidence exists and that administrative remedies have been exhausted, nevertheless confines itself to consideration only of evidence in the record, the party seeking review is left without any forum in which to argue the allegedly fraudulent basis of the administrative judgment.

*Id.* at 1257–59 (internal citations omitted). We find this reasoning to be persuasive, and accordingly we join the Ninth Circuit in recognizing an exception to the record rule where new evidence of material fraud has been brought to light which calls into question the integrity of the agency's proceedings.[13]

We turn next to the Trade Court's conclusion that Commerce did not, in the third administrative review, make a finding of fraud. *Trade Court Order*, at 9–10. The

---

[13] *See also United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 240–45 (1957) (in light of allegation that new evidence had been discovered showing fraud had been committed on the district court, the Supreme Court considered such evidence in deciding that vacation and remand were required); *Standard Oil Co. v. Montedison, S.p.A.*, 540 F.2d 611, 617 (3d Cir. 1976) ("[I]n appropriate circumstances the district court may, in [a section 146] action, in the exercise of a sound discretion, permit an issue of fraud which infected the Board's determination to be raised though it was not raised in the interference proceeding.").

government argues that evidence of inaccuracies is not the same as evidence of fraud and that, in the absence of fraud, no reopening of the proceeding is required. While Commerce did not in the third review make an explicit finding of "fraud," it certainly appeared to suggest that the evidence regarding Since Hardware's falsified certificates of origin could support a finding of fraud. Focusing on the multiple discrepancies between Since Hardware's certificates and the genuine exemplars, Commerce found that Since Hardware's certificates were "clearly not forms used by the [certifying agency of the purported country of origin]." *AFA Memo*, at 11. Because the same falsifications appeared in certificates purportedly originating from multiple independent suppliers, Commerce further found that "the most plausible explanation . . . is that Since Hardware is the source of [the] inaccuracies." *Id.* at 12. In reviewing Commerce's decision in the third administrative review, the Trade Court viewed "Commerce [as having] found [that] the forms submitted by Since Hardware . . . were fraudulent." *Since Hardware (Guangzhou) Co., Ltd. v. United States*, No. 09-00123, slip op. 10-108, at 10 (Ct. Int'l Trade Sept. 27, 2010); *see also id.* at 8, 20–21. In any event, regardless of whether Commerce made an express determination of fraud, it appears that Home Products submitted clear and convincing evidence which could support a finding that Since Hardware committed fraud in the third administrative review. The final question, therefore, is whether Home Products has presented similar evidence that fraud also tainted the second administrative review, which is the subject of this appeal.

We find that Home Products has met this burden. While Commerce did not specifically find that falsification had occurred in the second administrative review, we find that the Trade Court's decision was clearly erroneous in finding that "Home Products has failed to demonstrate

that any false information is even contained in the record of [the second] administrative review." *Trade Court Order*, at 10. Since Hardware's certificates from the second administrative review clearly contain the same discrepancies Commerce observed in certificates from the third administrative review, including the same typographical errors, different certificate numbering system, different date stamp, and noticeably different signatures. *Compare* J.A. 764 (genuine exemplar certificate), *with* J.A. 766 (copy of certificate Since Hardware submitted in the second administrative review).

Thus, contrary to the Trade Court, we find that Home Products has presented clear and convincing new evidence, sufficient to establish a prima facie case, that Since Hardware was guilty of fraud in the second administrative review. As discussed above, the fraud, if it occurred, was also likely material because Since Hardware relied on the certificates to show that it had purchased more than the requisite 33 percent threshold of certain steel inputs from ME suppliers, thereby qualifying those inputs for valuations based on their ME purchase prices rather than surrogate values. If the foregoing evidence had been brought to light prior to the conclusion of the second administrative review, it is quite possible that Commerce would have applied adverse facts available to Since Hardware's input submissions and calculated a dumping margin greater than the de minimis margin of 0.34 percent.

Because Home Products has presented clear and convincing new evidence sufficient to establish a prima facie case that the agency proceedings under review were tainted by material fraud, we find that the Trade Court abused its discretion in refusing to order a remand to allow Commerce to reconsider its decision in light of the new evidence. We need not decide whether material

inaccuracies—in the absence of fraud—would require a remand by the Trade Court or a reopening by Commerce.

CONCLUSION

Because we find that the Trade Court abused its discretion in denying Home Products' motions to amend and remand, the judgment is reversed, and we remand with instructions that the Trade Court remand this case to Commerce for further proceedings consistent with this opinion. In ordering that the case be remanded to Commerce, we express no opinion as to whether Commerce must exercise its authority to reopen; nor do we mandate a finding of fraud. In deciding whether the proceeding should be reopened, Commerce may appropriately consider the interests in finality, the extent of the inaccuracies in the second administrative review, whether fraud existed in the second administrative review, the strength of the evidence of fraud, the level of materiality, and other appropriate factors. While the agency's counsel in this appeal has opposed reopening, the views of Commerce must be expressed by the agency itself, not by litigating counsel. *See Abbott Labs. v. United States*, 573 F.3d 1327, 1332–33 (Fed. Cir. 2009) ("[W]e owe deference only to those considered agency judgments as to the issue directly involved in the litigation, not to the views of litigation counsel."); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."). A remand is necessary to secure the views of the agency itself. If Commerce decides not to reopen, that decision may in turn be reviewed by the Trade Court and, if necessary, by our court.

**REVERSED and REMANDED**