NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TRAVIS E. WILKES,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2016-1220

---

Petition for review of the Merit Systems Protection Board in No. DA-0432-11-0466-C-1.

---

Decided: April 8, 2016

---

TRAVIS E. WILKES, Norman, OK, pro se.

MATTHEW PAUL ROCHE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by PATRICIA M. MCCARTHY, ROBERT E. KIRSCHMAN, JR., BENAJMIN C. MIZER.

---

Before WALLACH, PLAGER, and HUGHES, *Circuit Judges.*

Opinion for the court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* WALLACH.

PER CURIAM.

Petitioner Travis Wilkes appeals the final decision of the Merit Systems Protection Board ("MSPB") denying his Petition for Enforcement of an MSPB order that reinstated his employment with the Department of Veterans Affairs ("the VA"). *See Wilkes v. Dep't of Veterans Affairs*, DA–0432–11–0466–C–1, 2015 WL 5564671 (M.S.P.B. Sept. 22, 2015); *see* Resp't's App. 115–17 (Petition for Enforcement). Mr. Wilkes alleges that the VA did not fully comply with the MSPB's order because it failed to provide certain benefits due to him under the Thrift Savings Plan ("TSP").[1] Pet'r's Br. 1–2. We affirm the MSPB.

## BACKGROUND

For almost twenty years, Mr. Wilkes worked as a Psychology Technician with the VA. Resp't's App. 38. In 2011, the VA proposed to remove Mr. Wilkes for performance reasons. *Id.* at 39–40. Before his removal took effect, Mr. Wilkes retired. *Id.* at 69. When he retired, Mr.

---

[1] The TSP "is a retirement savings and investment plan for Federal employees and members of the uniformed services." *See About the TSP*, https://www.tsp.gov/Plan Participation/AboutTheTSP/index.html (last visited Mar. 12, 2016). Employees, and under certain conditions the employing Federal agency, may contribute to TSP accounts. *See id.* A TSP participant may borrow money from his or her TSP account while employed with the Federal government, an action commonly known as a loan. *See Loans and Withdrawals*, https://www.tsp.gov/ PlanParticipation/LoansAndWithdrawals/loans/index. html (last visited Mar. 12, 2016).

Wilkes had an outstanding TSP loan, which automatically converted to a taxable distribution. *Id.* at 72.

Despite electing to retire, Mr. Wilkes challenged his proposed removal from the VA. Mr. Wilkes ultimately prevailed before the MSPB, which ordered the VA to cancel his proposed removal and retroactively reinstate him with back pay, interest, and benefits, including those arising under the TSP. *Id.* at 62.

The VA took several steps to reinstate Mr. Wilkes and restore his benefits. As for Mr. Wilkes's TSP benefits, the VA made matching contributions to his TSP account and advised Mr. Wilkes that any questions regarding the management of his account should be raised with the Federal Retirement Thrift Investment Board ("FRTIB"),[2] which administers the TSP. *Id.* at 110.

Mr. Wilkes subsequently filed the Petition for Enforcement with the MSPB and argued that the VA failed to fully comply with the MSPB's order reinstating his employment. Mr. Wilkes contended that the VA (1) misallocated his TSP makeup contributions[3] and associ-

---

[2] "The FRTIB is an independent Government agency that is managed by five presidentially appointed board members and an Executive Director who are required by law to manage the TSP prudently and solely in the interest of the participants and their beneficiaries." *See About the TSP*, https://www.tsp.gov/PlanParticipation/AboutThe TSP/ index.html (last visited Mar. 12, 2016).

[3] "*Makeup contributions* are employee contributions that should have been deducted from a [TSP] participant's basic pay or employer contributions that should have been charged to an employing agency on an earlier date, but were not deducted or charged and, consequently, are being deducted or charged currently." 5 C.F.R. § 1605.1 (2015).

ated breakage[4] to the "G Fund" instead of the "C Fund,"[5] and (2) failed to reimburse his TSP loan that had been converted to a taxable withdrawal upon his retirement. *Id.* at 121–22.

In an initial decision, Administrative Judge James Kasic of the MSPB denied Mr. Wilkes's Petition. The Administrative Judge concluded that an unrebutted affidavit from Kyle Inhofe, Chief of Human Resources at the VA's Oklahoma City Medical Center, explained that the VA's allocations to Mr. Wilkes's TSP account "were distributed to the 'G Fund' per an automatic setting that [Mr. Wilkes] could change by contacting the [FRTIB], as only he could implement such a change." *Id.* at 29; *see also id.* at 74–75 (Mr. Inhofe's Affidavit). The Administrative Judge also found that the VA made the requisite matching contributions to Mr. Wilkes's TSP account. *Id.*

---

[4]    "*Breakage* means the loss incurred or the gain realized on makeup or late contributions" and reflects "the difference between the value of the shares of the applicable investment fund(s) that would have been purchased had the contribution been made" on the date on which the contribution occurred "and the value of the shares of the same investment fund(s) on the date the contribution is posted to the account." 5 C.F.R. § 1605.1.

[5]    A TSP participant may allocate contributions in various TSP funds. The FRTIB manages the G Fund, which "buys a nonmarketable U.S. Treasury security that is guaranteed by the U.S. Government." *See Funds Overview*, https://www.tsp.gov/InvestmentFunds/FundsOverview/index.html (last visited Mar. 12, 2016). A private firm manages the C Fund, which "is invested in a stock index fund that fully replicates the Standard and Poor's 500 . . . Index." *See id.* A participant's allocation preferences will dictate which funds receive the participant's TSP contributions. 5 C.F.R. § 1605.13(a)(3).

at 29. And the Administrative Judge found that the VA "did not play[] any role in the reinstatement of [Mr. Wilkes]'s TSP loan." *Id.* Taken together, the Administrative Judge concluded that the VA fully complied with the MSPB's order reinstating Mr. Wilkes's employment. *Id.*

Dissatisfied with the Administrative Judge's initial decision, Mr. Wilkes sought review from the MSPB, which also denied his Petition. *See Wilkes*, 2015 WL 5564671, at ¶ 1. The MSPB found that the VA complied "with its TSP payment obligations under the applicable regulations" and that "the management of [Mr. Wilkes]'s TSP account [(i.e., the allocation of his contributions to particular TSP funds)] is a matter between [Mr. Wilkes] and the [FRTIB]." *Id.* at ¶ 13 (citations omitted). The MSPB also held that the VA "plays no role in reinstating [Mr. Wilkes]'s TSP loan" and otherwise had no obligation to inform Mr. Wilkes of his right to reinstate his TSP loan. *Id.* at ¶ 11 (citing *Crazy Thunder-Collier v. Dep't of the Interior*, 2010 M.S.P.B. 202, at ¶ 13–14 (2010)).

Mr. Wilkes appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012).

DISCUSSION

I. Standard of Review

In relevant part, we affirm the MSPB's decision unless it is "not in accordance with law." 5 U.S.C. § 7703(c)(1) (2012). We review the MSPB's legal determinations de novo. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). As the petitioner, Mr. Wilkes "bears the burden of establishing error in the [MSPB's] decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## II. Mr. Wilkes Abandoned His Argument that the VA Misallocated Contributions to His TSP Account

In his opening brief, Mr. Wilkes contends that the MSPB erred in holding that he could correct errors regarding TSP contributions because "[t]he MSPB used the wrong set of facts to make [its] decision." Pet'r's Br. 1. Mr. Wilkes alleges that the VA misallocated his TSP makeup contributions and associated breakage to the G Fund, rather than the C Fund. *Id.* at 2, 6.

After submitting his opening brief, Mr. Wilkes contacted counsel for the Government to provide an update on his case. Government counsel asserts that Mr. Wilkes informed him that the FRTIB correctly "calculated the breakage on [his] TSP makeup contributions based [on] investment in the 'C Fund.'" Resp't's App. 68. As a result, Government counsel also asserts that Mr. Wilkes informed him that "[he] would no longer be pursuing this part of [his] appeal" and "would not object if [Government counsel] explained this new development in the Government's informal brief." *Id.* Counsel for the Government memorialized this exchange in an email sent to Mr. Wilkes and invited Mr. Wilkes to "contact [him] if [the] description of [the] conversation is not accurate." *Id.*

The record does not indicate that Mr. Wilkes objected to the description of the conversation with Government counsel, nor have we separately received any such objection from Mr. Wilkes. As a result, we conclude that Mr. Wilkes has abandoned this aspect of his appeal.[6]

---

[6] Even had Mr. Wilkes not abandoned this aspect of his appeal, the law squarely supports the MSPB's conclusion that the VA does not manage his TSP contributions. *See* 5 C.F.R. §§ 1605.2(a) ("The TSP will calculate breakage on late contributions, makeup agency contributions, and loan payments . . . ."), 1605.22(c)(2) ("For errors

### III. The MSPB Properly Concluded that the VA Has No Obligation to Reinstate Mr. Wilkes's TSP Loan

Mr. Wilkes alleges that the VA did not fully comply with the MSPB's order reinstating his employment because the agency did not reinstate his TSP loan, which had been converted to a taxable withdrawal upon his retirement. Pet'r's Br. 2. The governing law does not support Mr. Wilkes's argument.

Mr. Wilkes, not the VA, had an obligation to seek reinstatement of his TSP loan. The VA may correct errors in Mr. Wilkes's TSP account consistent with the FRTIB's regulations. *See* 5 C.F.R. § 550.805(h) ("Agencies must correct errors that affect an employee's [TSP] account consistent with regulations prescribed by the [FRTIB]."). The FRTIB's regulations provide that, if an agency reinstates a wrongfully separated TSP participant, the participant *must* notify the TSP within ninety days of reinstatement to restore any previously withdrawn amount to the TSP account. *See id.* § 1605.13(d). During the ninety day period, a participant "may also elect to reinstate a loan which was previously declared to be a taxable distribution." § 1605.13(e). However, the regulations do not require the TSP to automatically restore a participant's loan, nor do they require the agency to notify

---

involving an investment in the wrong fund of which a participant or beneficiary has knowledge, he or she may file a claim for breakage with the [FRTIB] or TSP record keeper . . . [and] [t]he [FRTIB] or TSP record keeper must promptly pay breakage for such errors."), 1506.22(c)(3) ("If a participant or beneficiary fails to file a claim for breakage concerning an error involving an investment in the wrong fund in a timely manner, the [FRTIB] or TSP record keeper may nevertheless, in its sound discretion, pay breakage for any such error that is brought to its attention.").

the participant of the right to restore a TSP loan previously treated as a taxable distribution. *See id.* § 1605.13(d)–(e); *see also Crazy Thunder-Collier*, 2010 M.S.P.B. 202, at ¶ 13 (explaining that § 1605.13 "does not state any agency duty to provide notice of th[e] right" to reinstate a TSP loan). Thus, because it was incumbent upon Mr. Wilkes to contact the FRTIB to have his TSP loan reinstated, the MSPB properly concluded that the VA had no obligation to reinstate Mr. Wilkes's TSP loan.

## CONCLUSION

We have considered Mr. Wilkes's remaining arguments and find them unpersuasive.[7] Accordingly, the final decision of the Merit Systems Protection Board is

## **AFFIRMED**

## COSTS

Each party shall bear its own costs.

---

[7] After the parties concluded briefing, Mr. Wilkes filed a letter, which we treated as a motion, to supplement his opening brief. *See* Pet'r's Mot. to Supplement Opening Br. Mr. Wilkes appended extra-record evidence to the Motion. *See id.* at 3–4. The Government opposed the Motion and, alternatively, argued that the extra-record evidence does not alter the outcome of the appeal. Gov't's Resp. to Ct.'s Letter 2–3. As a general proposition, the court does not consider evidence that has not first been considered by the trial forum (here, the MSPB), though in some circumstances exceptions may be made. In this case, nothing in Mr. Wilkes's Motion alters the outcome of the appeal.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TRAVIS E. WILKES,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2016-1220

---

Petition for review of the Merit Systems Protection Board in No. DA-0432-11-0466-C-1.

---

WALLACH, *Circuit Judge*, concurring.

I concur in the rationale employed and the result reached by the majority. However, I write separately because I disagree with the majority's decision to accept and consider extra-record evidence in this appeal.

After the parties concluded briefing, Mr. Wilkes filed a letter, which we treated as a motion, to supplement his opening brief. *See generally* Pet'r's Mot. to Supplement Opening Br. Mr. Wilkes appended evidence to the Motion that was not before the MSPB when it denied his Petition for Enforcement—namely, a letter from the FRTIB discussing his (1) TSP makeup contributions and associated breakage and (2) TSP loan. *See id.* at 3–4. The court

invited a response from the Government, which opposed the Motion and, alternatively, argued that the extra-record evidence does not alter the outcome of the appeal. *See* Gov't's Resp. to Ct.'s Letter 2–3. The majority agrees with the Government that the extra-record evidence does not alter the outcome of the appeal. Maj. Op. at 8 n.7.

Precedent required the court to deny Mr. Wilkes's Motion. Mr. Wilkes did not present the extra-record evidence to the Administrative Judge, and the majority errs in accepting it for review. *See Hernandez v. Dep't of Air Force*, 498 F.3d 1328, 1333 (Fed. Cir. 2007) ("[N]either we, nor the [MSPB], may consider in the first instance evidence not presented to the [Administrative Judge]."); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973))).

The "record rule" has exceptions, but Mr. Wilkes has not alleged that the extra-record evidence meets any of them. *See Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1379 & n.12 (Fed. Cir. 2011) (explaining that a record may be supplemented when, inter alia, the record is inadequate or tainted by fraud); *Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 939 (Fed. Cir. 1990) (explaining that a record may be supplemented when the record contains an erroneous fact later corrected by the agency that issued the decision under review). And to the extent that the majority accepts the extra-record evidence for review and substantively assesses it, the majority impermissibly weighs the extra-record evidence against other facts on the record. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984).

Finally, Mr. Wilkes's pro se status does not require us to accept and consider the extra-record evidence. Alt-

hough we must liberally construe Mr. Wilkes's *pleadings*, *see, e.g.*, *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980), it is another thing entirely to suspend the statutory record requirements, 5 U.S.C. § 7703(c) (limiting this court's review of MSPB decisions to "the record"); *Rockwell v. Dep't of Transp.*, 789 F.2d 908, 912 (Fed. Cir. 1986) (discussing same).

Although I ultimately agree with the majority that the extra-record evidence does not affect the outcome of the appeal, I would have denied Mr. Wilkes's Motion and not considered the extra-record evidence in his submission, given the pernicious nature of the lack of predictability which may be engendered, even by this non-precedential per curiam opinion.