# United States Court of Appeals
# for the Federal Circuit

---

**UTTAM GALVA STEELS LIMITED,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES, AK STEEL CORPORATION, CALIFORNIA STEEL INDUSTRIES, INC.,**
*Defendants*

**ARCELORMITTAL USA LLC, STEEL DYNAMICS, INC., UNITED STATES STEEL CORPORATION, NUCOR CORPORATION,**
*Defendants-Appellants*

---

2020-1461

---

Appeal from the United States Court of International Trade in No. 1:16-cv-00162-JCG, Judge Jennifer Choe-Groves.

---

Decided: May 14, 2021

---

DIANA DIMITRIUC QUAIA, Arent Fox, LLP, Washington, DC, argued for plaintiff-appellee. Also represented by JOHN M. GURLEY, CLAUDIA DENISE HARTLEBEN, MATTHEW MOSHER NOLAN, NANCY NOONAN.

ELIZABETH DRAKE, Schagrin Associates, Washington,

DC, argued for defendants-appellants ArcelorMittal USA, LLC, Steel Dynamics, Inc., United States Steel Corporation. Steel Dynamics, Inc. also represented by NICHOLAS J. BIRCH, CHRISTOPHER CLOUTIER, GEERT M. DE PREST, WILLIAM ALFRED FENNELL, PAUL WRIGHT JAMESON, LUKE A. MEISNER, KELSEY RULE, ROGER BRIAN SCHAGRIN.

MELISSA M. BREWER, Kelley Drye & Warren, LLP, Washington, DC, for defendant-appellant ArcelorMittal USA, LLC. Also represented by KATHLEEN CANNON, ROBERT ALAN LUBERDA, PAUL C. ROSENTHAL, DAVID C. SMITH, JR.

THOMAS M. BELINE, Cassidy Levy Kent USA LLP, Washington, DC, for defendant-appellant United States Steel Corporation. Also represented by CHASE DUNN, JAMES EDWARD RANSDELL, IV, SARAH E. SHULMAN.

MAUREEN E. THORSON, Wiley Rein, LLP, Washington, DC, argued for defendant-appellant Nucor Corporation. Also represented by STEPHANIE MANAKER BELL, TIMOTHY C. BRIGHTBILL, TESSA V. CAPELOTO, LAURA EL-SABAAWI, CYNTHIA CRISTINA GALVEZ, DERICK HOLT, ALAN H. PRICE, ADAM MILAN TESLIK, CHRISTOPHER B. WELD.

_____

Before DYK, MAYER, and CHEN, *Circuit Judges*.

DYK, *Circuit Judge*.

This appeal arises out of an antidumping duty investigation by the United States Department of Commerce concerning certain corrosion-resistant steel products from India. Following two remands, the United States Court of International Trade (Trade Court) sustained Commerce's determination that granted Uttam Galva Steels Ltd. a duty drawback adjustment under 19 U.S.C. § 1677a(c)(1)(B) that resulted in no dumping margin. Defendants-Appellants ArcelorMittal USA LLC, Steel Dynamics, Inc., United

States Steel Corp., and Nucor Corp. appeal, challenging the propriety of the Trade Court's first remand to Commerce and arguing that Commerce's original determination should be reinstated.  We affirm.

I

As this court has explained, "[d]umping occurs when a foreign firm sells a product in the United States at a price lower than the product's normal value." *Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1372 (Fed. Cir. 2011). By statute, Commerce must impose antidumping duties on imported goods that are being sold, or are likely to be sold, in the United States at a less than fair value in a way that injures the domestic industry in the United States. 19 U.S.C. § 1673.  Commerce determines a respondent's dumping margin by calculating the amount by which normal value exceeds export price (U.S. price) or constructed export price.  *Id.*  Normal value is generally calculated to be "the price at which the foreign like product is first sold . . . for consumption in the exporting country."  19 U.S.C. § 1677b(a)(1)(B)(i).  To determine normal value, Commerce will disregard sales made at less than the respondent's cost of production.  *Id.* § 1677b(b)(1).  Cost of production constitutes (1) the cost of manufacture; (2) "selling, general, and administrative expenses"; and (3) packaging expenses.  *Id.* § 1677b(b)(3).  If there are no sales in the exporting country that remain after removing the sales below cost of production, then Commerce will base normal value on the constructed value of the subject merchandise.  *Id.* § 1677b(b)(1).  Constructed value is essentially the cost of production plus profit.  *See id.* § 1677b(e).  Export price is typically calculated to be the price at which the subject products are first sold to an unaffiliated purchaser in the United States.  *Id.* § 1677a(a).  Constructed export price is "the price at which the subject merchandise is first sold . . . in the United States . . . by or for the account of the producer or exporter of such merchandise or by a seller

affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter." *Id.* § 1677a(b). The export price is subject to several possible adjustments. *Id.* § 1677a(c).

One such adjustment is the "duty drawback adjustment," which is at issue here. This adjustment involves duties paid or owed on imports (e.g., raw materials) to the home-market country that produces the goods for export to the United States (the country of exportation). *Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1340–41 (Fed. Cir. 2011). The import duties on the inputs used to produce home-market goods increase the normal value. The statute provides that the duty drawback adjustment requires an increase to U.S. price, stating that

> [t]he price used to establish export price and constructed export price shall be . . . increased by . . . the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States.

19 U.S.C. § 1677a(c)(1)(B). In *Saha Thai*, we held that Commerce may appropriately adjust normal value to include "exempted duties in [cost of production] and [constructed value]" when making the duty drawback adjustment in situations in which "[i]t would be illogical to increase [export price] to account for import duties that are purportedly reflected in [normal value], while simultaneously calculating [normal value] based on a [cost of production] and [constructed value] that do not reflect those import duties." 635 F.3d at 1342–43.

The question here is whether Commerce's initial duty drawback methodology complied with 19 U.S.C. § 1677a(c)(1)(B).

## II

In 2015, several groups, including appellants here, petitioned Commerce and the United States International Trade Commission to initiate an antidumping duty investigation, alleging that imports of corrosion-resistant steel products ("CORE") from India had been imported to and sold in the United States at prices that violated antidumping laws. Commerce commenced an investigation and selected Uttam and another entity (not involved in this appeal) as mandatory respondents.

During the investigation, Uttam provided Commerce with information about the duty drawbacks that it received from the Indian government in connection with its production of CORE. Uttam explained that it received drawbacks in the form of exemptions and rebates on import duties for three major imported inputs: hot-rolled steel coil, cold-rolled steel coil, and zinc. Because Uttam exports CORE to both affiliated and non-affiliated companies in the United States, Commerce calculated both an export price and constructed export price to determine Uttam's dumping margin.

On June 2, 2016, Commerce issued its Final Determination that CORE from India was being sold in the United States at less than fair value, calculating a final dumping margin of 3.05% for Uttam. It is not clear from Commerce's Final Determination whether Commerce based normal value on home-market sales or constructed value. In this Final Determination, Commerce made an adjustment to Uttam's export price and constructed export price considering Uttam's reported benefit from the three Indian

government duty drawback programs.[1]  But Uttam contended that the adjustments were not properly calculated.

Historically, Commerce, in calculating drawback duty adjustments, attributed all of a respondent's reported duty drawbacks to U.S. sales.  In other words, Commerce took the respondent's reported duty drawbacks and divided that reported amount by the respondent's total number of subject U.S. exports, attributing to each U.S. export its share of the duty drawback.  Here, in initially calculating Uttam's duty drawback adjustment, Commerce departed from this historical practice.  Its new methodology allocated the import duties exempted or rebated "based on the import duty absorbed into, or imbedded in, the overall cost of producing the merchandise under consideration."  J.A. 6043.  The effect was to attribute some portion of the duty drawbacks to home market sales and another portion to U.S. exports, rather than attributing the whole amount to U.S. exports.  Commerce explained that it needed to change its methodology because certain respondents, such as Uttam, "source[d] a material input from both domestic and foreign suppliers," which might "result in an imbalance in the comparison of [export price] or [constructed export price] with [normal value]."  J.A. 6043.  Uttam appealed the Final Determination to the Trade Court.

Uttam argued that Commerce's new methodology of allocating drawbacks was "inconsistent with the statute and the agency's alleged practice of computing exempted and rebated duties over total exports to the U.S."  *Uttam Galva Steels Ltd. v. United States* (*Uttam I*), 311 F. Supp. 3d 1345, 1352 (Ct. Int'l Trade 2018).  The Trade Court agreed,

---

[1]   These programs were:  (1) the Duty Drawback Scheme (a rebate program); (2) the Advance Authorization Program (an exemption program); and (3) the Duty Free Import Authorization Program (an exemption program).

concluding that Commerce's new methodology was not permitted under 19 U.S.C. § 1677a(c)(1)(B) and remanded the Final Determination to Commerce with directions to recalculate the adjustment. *Id.* at 1355–57.

On remand, Commerce calculated the duty drawback adjustment by increasing the export price by the total amount of drawback duties. But Commerce also made a circumstance-of-sale adjustment that Uttam again challenged at the Trade Court. The Trade Court also determined this adjustment to be impermissible and remanded. *Uttam Galva Steels Ltd. v. United States* (*Uttam II*), 374 F. Supp. 3d 1360, 1363–65 (Ct. Int'l Trade 2019).

In its Second Remand Redetermination (the determination now before us on appeal), Commerce continued to grant the same duty drawback adjustment to Uttam's export price (as required by *Uttam I*). Commerce, however, made three other adjustments to Uttam's normal value by doing the following:

> [1] not including imputed import duties to Uttam Galva's cost of production . . . ; [2] making a [circumstance of sale] adjustment to remove all booked import duties from constructed value . . . and from Uttam Galva's home market prices; and [3] making another [circumstance of sale] adjustment to [constructed value] and home market price to add the same amount of the per-unit amount of import duties added to U.S. price.

J.A. 65. In Commerce's view, these circumstance of sale adjustments "remedy[] the imbalance in the comparison between normal value and [export price] or [constructed export price]" by "remov[ing] unrecovered paid and exempted duties from [constructed value] or home market price as a [circumstance of sale] adjustment" and "add[ing] the per-unit amount [of import duties] to normal value that was added to U.S. price as a second [circumstance of sale]

adjustment." J.A. 83. Making these circumstance of sale adjustments has been challenged in other investigations.[2] Nevertheless, given this methodology, here, the estimated weighted average dumping margin for the period of investigation for CORE from India was 0.00%.

Reviewing the Second Remand Redetermination, the Trade Court held that Commerce's duty drawback adjustment continued to be in accordance with the law. *Uttam Galva Steels, Inc. v. United States* (*Uttam III*), 416 F. Supp. 3d 1402, 1406 (Ct. Int'l Trade 2019). The court, however, expressed skepticism that the three new adjustments to normal value were "supported by either the statute's text or Commerce's implementing regulation." *Id.* at 1407. But because Uttam had not contested these adjustments, the Trade Court sustained Commerce's Second Remand Redetermination. *Id.*

The appellants appeal, arguing that the Trade Court improperly set aside Commerce's original Final Determination and seeking to have the determination reinstated. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

III

"We review the Trade Court's decision to sustain Commerce's final results and remand redeterminations de novo." *Dillinger France S.A. v. United States*, 981 F.3d 1318, 1320 (Fed. Cir. 2020) (citing *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1357 (Fed. Cir. 2010)). We will affirm Commerce unless its decision is "unsupported

---

[2]    *E.g.*, *Habaş Sinai ve Tibbi Gazlar Isthsal Endüstrisi, A.Ş. v. United States*, 415 F. Supp. 3d 1195, 1206–13 (Ct. Int'l Trade 2019), *appeal docketed*, No. 21-1066 (Fed. Cir. Oct. 19, 2020).

by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

The petitioners argue that the methodology that Commerce used to calculate Uttam's duty drawback in its original Final Determination was proper and that the Trade Court erred in setting it aside.

We explained the statute's purpose in our decision in *Saha Thai*:

> The purpose of the duty drawback adjustment is to account for the fact that the producers remain subject to the import duty when they sell the subject merchandise domestically, which increases home market sales prices and thereby increases [normal value]. That is, when a duty drawback is granted only for exported inputs, the cost of the duty is reflected in [normal value] but not in [export price]. The statute corrects this imbalance, which could otherwise lead to an inaccurately high dumping margin, by increasing [export price] to the level it likely would be absent the duty drawback.

635 F.3d at 1338. In effect, the duty drawback adjustment constitutes an increase to the U.S. price because the producer receives additional revenue attributable to its U.S. sales by reason of the duty drawback.

In the challenged methodology, Commerce allocated Uttam's duty drawback adjustment between exported goods and home-market goods, which lessened Uttam's overall duty drawback adjustment to export price. There is no basis for doing so. The statute provides that

> [t]he price used to establish export price and constructed export price shall be . . . increased by . . . the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the

exportation of the subject merchandise to the
United States.

19 U.S.C. § 1677a(c)(1)(B).  The duty drawback statute re-
quires an adjustment to "export price" based on the full ex-
tent of the duty drawback.  It does not impose an additional
requirement that the respondent trace particular imported
goods to U.S. exports.

It does not make a difference whether the imported in-
puts that qualified for a drawback were actually incorpo-
rated into goods sold in the exporter's domestic market
because the Indian government credited the drawback to
the quantity of goods that were in fact exported, whatever
the source of the inputs used to produce foreign goods.  As
its text makes clear, the statute requires an upward adjust-
ment to "export price and constructed export price" based
on the drawback that occurred "by reason of the exporta-
tion of the subject merchandise to the United States."  *Id.*
§ 1677a(c)(1)(B).  The entire drawback was allowed "by rea-
son of the exportation."  *Id.*

## CONCLUSION

Because Uttam does not challenge the additional ad-
justments made by Commerce in its Second Remand Rede-
termination, we have no reason to address these
adjustments on appeal.  The judgment of the Trade Court
is affirmed.

**AFFIRMED**